### 59361. BELL v. BELL.

DEEN, Chief Judge.

1. An award of child custody in a divorce case is prima facie evidence of the mother's legal right to custody. "However, contrary to appellant's contentions, in order to change that award of custody the trial court does not necessarily have to find that the legal custodian has forfeited her parental rights under Code Ann. §§ 74-108, 74-109 and 74-110" but there must be a showing either that the original custodian is no longer able or suited to retain custody *or* that the conditions and circumstances surrounding the child have so changed that its welfare would be enhanced by modifying the original judgment. *Dearman v. Rhoden,* 235 Ga. 457 (3) (219 SE2d 704) (1975).

2. On petition of the father of the six-year-old daughter of the parties the court, after an exhaustive hearing, withdrew custody from the appellant mother and placed it in the appellee. A careful examination of the record in this case reveals no change of condition relating to the welfare of the child, except for the better, with the sole exception on which the trial court based his order removing the child from her custody: "That defendant has moved her home and that of the child to the metropolitan area of Atlanta, Georgia, where she and the child live and make their residence and home in an apartment with a male person known as C—— H——. Defendant and Mr. H—— are not married but are living together without the benefit of matrimony . . . Defendant stated that she and Mr. H—— intend to marry, but have no definite plans to do so and will make no plans until the matter of the custody of the child is finally determined . . . Defendant expressed no regrets or remorse, nor any feeling of guilt for her relationship with Mr. H——, nor the obvious implications

arising from living with a male person not her husband . . . Plaintiff, although admitting a [similar] transgression, did so in a repentent manner. He denounced the lifestyle of his wife (and presumably his own transgression) as one which was 'unchristian' and wrong in which to raise a child . . . It is, therefore, concluded that the Defendant is living with her daughter in such manner as to expose said child to immoral, indecent and illicit influences likely to degrade the child's moral character . . . That the plaintiff can afford said child physical and material living conditions equal to or better than defendant can, and at the same time afford such child a decent, moral and lawful home environment in which to live, grow and develop . . . That it is in the best interest of said child to change her custody from defendant to plaintiff, it being the opinion of the Court that such change of custody will best promote said child's welfare and happiness."

A thorough examination of the testimony of all witnesses satisfies us that the trial judge's findings of fact and conclusions of law are based in their entirety on the plaintiff's admission of and lack of repentence for the act of living with a third party without benefit of clergy, and that all other factors included in the testimony, such as the actual facts of school and home environment, were not taken into account. As to this salient factor, it should be noted that the defendant testified: "Q. What is the hold-up? A. This custody hearing. Q. This has prevented the marriage? A. My lawyer advised me that it wouldn't be the thing to do with this staring us in the face; that we should hold off until this is behind us." The attorney made the following statement: "As far as their marriage is concerned, these people would already have been married except for me. Mrs. Bell counseled me about that. I instructed Mrs. Bell that . . . I was going to tell her to not get married. I didn't want this court or any other court to have any thinking that anything was done for the purpose of window dressing."

Counsel for appellant argues in his brief:

"We know that in 1854, the Courts frowned upon couples living together without the present benefit of matrimony as in the case of *Lindsey v. Lindsey,* 14 Ga. 657, at page 660, we find the following judicial approval of the double standard: 'Upon principles of abstract ethics, there may be no difference in the sin of the man and the woman, who violate the laws of chastity. In the eye of the omniscient God, the weak and erring woman may not be (to say the least), the more sinful and degraded of the two. But we do know, that *in the opinion of society,* it is otherwise. The man may notoriously sin in this regard; and yet, sometimes, retain a position of respectability, or quasi respectability, by means of which his

relations and those of his family, with decent people, are maintained; his children may associate with such persons, and be educated to become good and useful members of society. But otherwise it is with the frail female; for when once she sins after this sort, she sins *against society*. Easy is the descent, with her, then, to an Avernus of utter and irremedial ruin, where her associations are with the vulgar, the vile and the depraved. If her children be with her, their characters must be, more or less, influenced and formed by the circumstances which surround them.' (Emphasis supplied.)

"This, however, is not 1854, but is 1979. While the trial court's beliefs probably reflect the standards of our society through the first half of this century, they simply are no longer an accurate rule by which we may not gauge issues of morality in today's world. Among today's young adults, the defendant is conducting herself in a manner which we believe to be generally acceptable to society."

Counsel is correct in his summary that many today adopt the religious philosophy of values clarification and situation ethics of "do whatever feels good." The General Assembly representing the maturity of the people has established public morality bottomed on some absolute values. We must support the public morality as established, until changed, nor can this court overrule the latter cited Supreme Court case. We must follow. This case appears to be good and binding law.

It follows from the above that the sole question in the case is whether the fact of the defendant's living with a man to whom she is not presently married can, under the any evidence rule applicable to custody cases, be sufficient in and of itself to justify the decision that the child's welfare would be enhanced by a change of custody. This state has held that such is the case, and that such evidence "with all reasonable inferences and deductions therefrom, was sufficient to authorize, but not to require, a change in custody in the present case and that the trial court's judgment was within the permissible limits of its discretion. See *Gaughf v. Gaughf,* 214 Ga. 483 (105 SE2d 314)." *Simpson v. Simpson,* 233 Ga. 17, 21 (209 SE2d 611) (1974).

Regardless of whether the defendant's actions were or were not based on advice of counsel, they were her decision, and so long as the marital situation remains unresolved a superior court judge's conclusion that such fact authorizes a change of custody cannot be disturbed by this court.

*Judgment affirmed. Birdsong and Sognier, JJ., concur.*

ARGUED FEBRUARY 6, 1980 — DECIDED APRIL 9, 1980 —

*Ben Kirbo,* for appellant.
*Ronnie J. Lane,* for appellee.