## 62883. HOWARD v. FINCHER.

Birdsong, Judge.

This is an appeal by the plaintiff below of the following order and judgment of the trial court:

"This is a child custody case in which the Plaintiff-Father seeks to remove custody of his two children from the Defendant-Mother and have the children placed with himself. The case was vigorously contested on both sides with the evidentiary hearings covering portions of three consecutive days. Each party was represented by able counsel. From the evidence presented, the Court finds the following facts:

"PLAINTIFF and DEFENDANT were divorced in April 1977. The custody of their two children, Lee and Kim, born October 16, 1973 and November 6, 1974, respectively, was awarded to the mother.

"The DEFENDANT married Tommy Whiggum in September, 1977 and was divorced from him in March, 1978. DEFENDANT remarried Mr. Whiggum in September, 1978 and divorced him a second time in April, 1980.

"DEFENDANT married Steve Fincher in January, 1981, and remains married to him, although they separated for two or three weeks in March because of a disagreement. During this separation

from Mr. Fincher, DEFENDANT and the children lived for a time in the home of DEFENDANT's former husband, Mr. Whiggum. Mr. Fincher was seventeen years of age at the time of his marriage to the DEFENDANT and he has since attained the age of eighteen years.

"Since her divorce from the PLAINTIFF in 1977, DEFENDANT and the children have had fourteen different residences.

"DEFENDANT is presently unemployed and is presumably supported by her husband, a high-school dropout, who earns approximately $120.00 per week. DEFENDANT receives $150.00 per month child support from the PLAINTIFF. DEFENDANT's work record is marginal, at best. She evidently is intelligent and capable, or at least is able to convey this impression to prospective employers, but she lacks persistence or self-discipline or a willingness to work, and has left all of her positions of employment since her divorce from the PLAINTIFF because of "personal" or "domestic" problems.

"In addition to her stormy marital history over the past four years, the DEFENDANT has endured a D and C; a complete hysterectomy; an appendectomy; a gall bladder operation; an operation for kidney stones; the death of her father; five automobile wrecks; the loss of her home to fire; and the burning of two automobiles. The details of these events were not presented at the trial, but that they occurred was not questioned.

"PLAINTIFF has remarried and he and his wife have a nine-month-old baby. PLAINTIFF is regularly employed and earns $11.30 per hour and expects a raise before the end of the summer. Mrs. Howard is not employed outside of the home and would expect to remain in the home to care for the children should MR. HOWARD succeed in gaining custody.

"At one point following their divorce, PLAINTIFF was shot by the DEFENDANT under disputed circumstances when he came to DEFENDANT's residence late at night under the influence of alcohol.

"This Court did not choose to interview the children, who appear clean, healthy and happy. Lee has just completed the first grade and Kim has just finished kindergarten and will enter first grade next September. Although they live in Dodge County, both children are enrolled in the Pulaski County School System. Lee's grades were good this past year, but deteriorated during the second half of the school year after he was placed in the Dodge County School System for six weeks. Lee was absent from school for fourteen out of the last thirty school days without excuse.

"Based on the testimony of a school and educational psychologist, Dr. Myra Burch, who interviewed the children, tested

them, and examined their standardized test results, the Court finds as a matter of fact that, despite the rather uncommon domestic and personal experiences of the DEFENDANT over the past four years, the emotional development of these children has been essentially normal and that they are well adjusted and have a good relationship with their parents. Dr. Burch testified that she found no evidence of emotional insecurity in the children; that the children have a nurturent, positive relationship with their mother; and that the DEFENDANT appears to be doing a good job of mothering, if not wifing.

"This Court concedes that there have been many significant changes in circumstances and conditions in the lives of these children since their parents were divorced, and that common sense would indicate that in the vast majority of cases changes such as those here could have resulted in severe harm to the children. However, in this most unusual case, while the record is replete with evidence of change, *there is no evidence which convinces this Court that the children have been harmed or that they are likely to suffer harm from the changes in conditions shown by the evidence.* The rule is that change of conditions affecting the welfare of a child occurring after the rendition of a former final custody judgment which will warrant the issuance of a new judgment affecting a change in custody is essentially a fact issue in each individual case to be decided by the trial court. *Robinson v. Ashmore,* 232 Ga. 498 [207 SE2d 484]. It is the considered judgment of this Court, after hearing all of the evidence and observing the witnesses, that these children have not been harmed by their mother's lively lifestyle, and that the interests of their health, happiness and general welfare will best be served by leaving them with her.

"It is therefore ordered that the prayers of the PLAINTIFF should be, and they are hereby, denied." (Emphasis supplied.)

The appellant concedes that if there is any reasonable evidence to support the trial court's award, the judgment below will not be disturbed. *Robinson v. Ashmore,* 232 Ga. 498, supra, but contends the trial court abused its discretion. Short of saying the trial court abused its discretion in its judgment, however, we find rather that the court's judgment is based on the erroneous conclusion that there is "no evidence" of harm or likelihood of harm to the children.

The trial court apparently based its judgment on the testimony of the school (not clinical) psychologist that she found no evidence of emotional insecurity in the children, "that the children have a nurturent, positive relationship with their mother, and that [the mother] appears to be doing a good job of mothering. . . ." The record shows that this school psychologist reached her con-

clusions after spending 45 minutes with each child during which she administered standardized drawing tests, and after talking with their mother who assured the school psychologist that the children were fine, and all without any knowledge of the family's chaotic domestic life and without even knowledge that the seven-year-old girl Kim had suffered a nervous condition requiring medication. The school psychologist's conclusions were made without regard to or knowledge of the fact shown by the evidence at trial that these children spent perhaps half their time with their father and paternal grandparents, who might therefore be the source of the children's ability to cope, and all of whom do appear to provide stable, nurturent relationships. The boy Lee's school teacher testified that Lee was insecure and anxious, was "not the same child" she first began to teach and had missed fourteen of the last thirty days without excuse. The evidence shows further that the appellee mother has moved the children fourteen times in four years; that she was terminated from several of the jobs she left; that in her marital adventures she had caused the boy Lee to be moved from school to school in his first grade, for which he became three months behind in his work. The evidence shows that less than three months before this hearing she left her third husband (fourth marriage) six weeks after the marriage, and returned to the home of her second husband Tommy Whiggum where she endured an overdose of drugs. The evidence shows that when the appellant went to the appellee mother's house to determine if a man was living there with the children, the appellee pulled a gun on the appellant while he held the child Kim in his arms and threatened to shoot him, and did shoot him after he put Kim down. The evidence shows the appellee divorced her second husband Tommy Whiggum after he beat and injured the child Kim, that a month later she took out an assault warrant against him when he came to her home and beat her, then remarried and divorced him and took out two other warrants against him, alleging that he had threatened her and her children and that he threw her from a car. The evidence shows that notwithstanding her subsequent marriage to the eighteen-year-old Mr. Fincher, this Mr. Whiggum is still on the scene or in the wings, he being her refuge (and, perforce, her children's refuge) when she left Mr. Fincher less than three months before this hearing, he having taken the children to school when she moved to his house, and having been seen in the children's school yard two weeks prior to this hearing, and inasmuch as he avers that they are good enough friends that some of the children's clothes are still at his house.

In "this most unusual case [where] the record is replete with evidence of change," where the domestic and personal instability of

the mother is established, where the evidence even suggests actual physical danger to the children, and where the evidence of the mother was in high conflict with the other evidence, the trial judge did not choose to interview the children and did not, as he might have done, procure an investigation of the appellee's home life and environment through a family and children services agency (see Code Ann. § 74-113). Instead, the trial court relied on the positive report of one who had spent only 45 minutes with each child without benefit of any background information except the nice impression she had been persuaded to by the mother, which impression is contradicted by the evidence before the trial court. The trial court erroneously concluded that there was no evidence in this record indicating harm or likeliness of harm. This erroneously based judgment is reversed (see *Ayers v. Yancey Bros. Co.,* 141 Ga. App. 358, 360, 362 (233 SE2d 471), and returned to the jurisdiction of the trial court with direction that the trial judge reconsider the evidence and in his discretion direct that such other proceedings be followed and such further evidence be received (see, e. g., Code Ann. §§ 74-113; 24A-302) as in his opinion will reflect the truth and serve the best interests of these children.

*Judgment reversed with direction. Shulman, P. J., and Sognier, J., concur.*

DECIDED FEBRUARY 25, 1982.

*W. Edward Meeks, Jr.,* for appellant.
Wanda Fincher, *pro se.*