## 70475. GIBSON v. PIERCE.
(335 SE2d 658)

DEEN, Presiding Judge.

Nancy H. Gibson, formerly Nancy Pierce, and James Pierce were divorced on March 12, 1984, and custody of their three-year-old daughter was awarded to appellant. Approximately two months later, James Pierce filed a petition seeking a change of custody, contending there had been a material change of conditions affecting the health and well-being of his daughter. Some time after the divorce, appellant began dating David Gibson and married him on August 4, 1984. A hearing on the petition was held on October 29, 1984, and the court issued an order changing the custody of the child from appellant to Pierce on December 19, 1984. The trial court found that "the defendant admitted that on several occasions during May, 1984, that her boyfriend had spent the night, that she slept with her boyfriend, and that the minor child was present in the home. There was testimony of other witnesses who testified of seeing Defendant's boyfriend's truck at Defendant's house at late night hours and early morning hours of the same night. Defendant's testimony at the motion hearing is contradictory to sworn testimony given on deposition dated June 28, 1984. There is some evidence that Defendant has become uncooperative in [allowing] Plaintiff to visit with his daughter." From this evidence the court found a material change of conditions affecting the welfare of the child and awarded custody to Pierce. This court granted a discretionary appeal to review the lower court's order. *Held*:

Once a permanent award of child custody has been made, when the non-custodial parent seeks to change custody, the trial court must determine whether there has been a material change of conditions affecting the welfare of the child. *Haralson v. Moore*, 237 Ga. 257 (227 SE2d 247) (1976). In determining whether a material change of condition has occurred, the trial court is vested with a discretion which will not be controlled by this court absent abuse. *Westmoreland v. Westmoreland*, 243 Ga. 77, 79 (252 SE2d 496) (1979). This court will affirm the trial court's decision if there is any reasonable evidence to support it. *Blackburn v. Blackburn*, 168 Ga. App. 66 (308 SE2d 193) (1983).

In reviewing the evidence presented to the trial court, we find the court's findings of fact to be somewhat scanty, but nevertheless adequate so as not to constitute an abuse of discretion in finding a material change of conditions affecting the welfare of the child. The transcript shows that the mother admits sleeping with her fiancé (now her husband) during the month of May prior to their marriage in August. This raises implications and inferences of possible potential criminal fornication, which is a misdemeanor. See OCGA § 16-6-18. Although the appellant claimed that she and her future husband never engaged in inappropriate conduct in the presence of the child, her credibility

was impeached by the revelation that she had given false testimony in an earlier deposition.

At the time of the hearing in October, it was argued, and the judge could have found, that the child was living in a loving environment in a large three-bedroom mobile home with her mother and step-father, was well cared for, well fed, and attended a progressive early learning center during the daytime while her mother worked. After the evidence was presented, Mrs. Gibson's counsel suggested that the court appoint a psychologist to evaluate the child. The judge stated that he had privately talked to the child and found her to be very bright, but did not ask her any questions. He asked if Pierce objected to an evaluation of the child. His attorney stated that "she has already made that visit and they found absolutely nothing wrong with the little girl except that she was going through the same thing that any child of that age would be going through in a divorce and she was being separated from her parents, and that's the reason we did not bring any evidence in, nothing other than that. Nothing unusual than what any other little girl goes through." Other evidence, however, of an adverse affect on the child's welfare was presented, i.e., that she cried before she was returned to her mother after her father had exercised his visitation rights, and that she had lost weight when her father exercised his month-long visitation rights.

The court also found that there was evidence that the mother had become uncooperative in allowing the father to visit with the child. The record shows that the appellant acknowledged that visitation rights had been troublesome between herself and the appellee; she had on one occasion disputed the appellee's assertion of his visitation rights.

In a bench trial the judge sits as trier of fact. His findings are analogous to the verdict of a jury. They should not be disturbed if there is any evidence to support them. We do not, and cannot, on appeal blindly accept the evidence of any party to the litigation or determine the merits of the case from a point of advocacy, what we thought should have been or what we would have done had we served as trier of fact. We cannot usurp the wide discretion of the factfinder. Where the trial court finds the facts and enters judgment thereon, the sole determination in this case is whether there is any reasonable evidence to authorize the judgment.

Our court is compelled to construe the evidence to uphold the judgment rather than to upset it. While indubitably the evidence would have authorized a finding of fact and conclusion of law as contended by the mother, yet the trial judge as factfinder had the wide discretion to reject this and accept the version or the view presented by the father. We cannot set aside what has been legitimately done. In the absence of legal error, our appellate court is without jurisdic-

tion to interfere with the judgment here supported by some reasonable evidence. The factfinder remains "[t]he best doctors of doubt that we know of . . ." *Central R. Co. v. Ferguson*, 63 Ga. 84, 85 (1879) and quoted in *Quaid v. State*, 132 Ga. App. 478, 483 (208 SE2d 336) (1974), by Judge Sol Clark.

*Judgment affirmed. Banke, C. J., Birdsong, P. J., Sognier and Pope, JJ., concur. Carley, J., concurs in the judgment only. McMurray, P. J., Benham and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

The question in change of custody cases between natural parents is whether the evidence proves "a material change [in condition] substantially affecting the welfare of the minor [child]." *Bisno v. Bisno*, 238 Ga. 328, 329 (232 SE2d 921) (1977). If it does not, then the wide discretion which the trial courts have in applying the legal standards in such cases cannot be exercised so as to change custody from the parent whom the court had earlier determined should have custody. As recognized in *Bisno*, supra, "there are limits to the trial court's discretion . . . ," Id. at 328, and one of them is whether the evidence supports the conclusion necessary to effect a change of custody. "As between natural parents, a change in custody of a minor child may be awarded only upon a showing of a change in material conditions or circumstances of the parties or the child . . . and that the change of custody would be in the best interests of the child. OCGA § 19-9-1 (b) . . . [cits.]" *Blackburn v. Blackburn*, 168 Ga. App. 66, 70 (1) (308 SE2d 193) (1983).

The finding that the mother's deposition testimony was contradicted by her trial testimony is marginal at best. At deposition, she had answered "no" to whether she and her present husband had "stayed overnight at your house in the presence of your daughter." Although she admitted at trial that he had stayed overnight before they were married, she insisted that the child had always been put to bed before they retired and that they rose before she did. Thus, "in her presence" lent an equivocal meaning to the question so that the answer given was not necessarily false. Even if the answer given at deposition were regarded factually as a false answer, it strains logic to relate the fact of its falsity to the legal standard for change of custody of the child, i.e., a detrimental "change in material conditions or circumstances."

A second faulty finding upon which the trial court based the change was that the mother "has become uncooperative" in regard to the father's visits with the child. The only evidence in the record bearing on visitation was the mother's testimony in support of her motion for contempt, which was pending at the same time but was not ruled on by the same trial judge because he was totally unfamiliar

with the prior divorce and custody proceedings and so did not take jurisdiction of the motion. Nevertheless, the mother testified that the father kept the child longer than allowed by the controlling custody order. Even if there was some bickering and quibbling between the two parents about precise adherence to the terms of the custody order, there was no showing that this adversely affected the child or that any adverse effect was attributable to the mother.

Thus, the only factual basis left is the admitted occasional premarital cohabitation. While it is not condoned by our law and is, as the majority pointed out, a misdemeanor punishable by fine and/or imprisonment, the fact that the illegality of this activity had ceased some months before the hearing due to the parties' marriage was undeniable. The law provides punishments for the criminal offense; deprivation of child custody is not one of them. If the custodial parent's criminal activity interferes with the welfare of the child so that "the best interests of the child" indicate a change of custody, then of course it would provide a legal ground for making it. But here there was no showing whatsoever that these legally disapproved past incidents which had ended and would not resume, constituted "a material change substantially affecting the welfare of the minor [child]." *Bisno*, supra.

I would reverse.

I am authorized to state that Judge Benham joins in this dissent.

DECIDED SEPTEMBER 13, 1985 —
REHEARING DENIED OCTOBER 2, 1985 — 

*James W. Smith*, for appellant.
*Rodger E. Davison*, for appellee.