## 70719. CITY OF ATLANTA v. HIGHTOWER.
### (338 SE2d 683)

BEASLEY, Judge.

Willie Hightower, injured when a MARTA bus ran over an undermined portion of Canter Road in Atlanta, brought suit against MARTA and the city. Both defendants answered and MARTA filed a cross-claim against the city seeking recovery for damages to its bus.

On the trial a directed verdict was granted for MARTA on plaintiff's claim against it and the jury returned verdicts in favor of Hightower on his complaint and MARTA on its cross-claim against the city. The city's motion for judgment n.o.v. based on prior motions for directed verdict was denied. The city appeals and contends the evidence did not authorize the verdicts against it.

The principal issue was whether the defect in the street had existed for a sufficient length of time for notice to be inferred so as to hold the city liable. See OCGA § 32-4-93.

OCGA § 32-4-93 is the present day codification of the decision in *Mayor, etc. of Montezuma v. Wilson*, 82 Ga. 206, 209 (2) (9 SE 17) (1888),[1] where it was held: "A municipal corporation cannot be held liable for damages occurring by reason of a defect in its streets, sidewalks, sewers or bridges, when it had no notice thereof, or when such defect has not existed for a sufficient length of time from which notice can be inferred, provided the corporation has been guilty of no negligence in constructing or repairing the same." This principle had been expressed in earlier cases, especially *Mayor, etc. of Atlanta v. Perdue*, 53 Ga. 607, 608 (1875) where it was pointed out that a municipal corporation is bound to keep its streets and sidewalks in safe condition for travel and is "liable for injuries caused by its *neglect* or *omission* to keep its streets and sidewalks in repair, as well as for those caused by defects occasioned by the *wrongful acts of others*." The court observed that if the defect had existed only a short time so that the municipality could not reasonably have had knowledge then actual notice must be shown. However, if the street defect "existed for such a length of time as by reasonable diligence in the performance of its duty, the defect *ought* to have been known by [the municipal corporation] then notice will be presumed." Accord *City of Atlanta v. Robertson*, 36 Ga. App. 66, 68-69 (135 SE 445) (1926); *McFarland v. City of McCaysville*, 39 Ga. App. 739 (148 SE 421) (1929); *City of Silvertown v. Harcourt*, 51 Ga. App. 160 (179 SE 772) (1935); *Mayor, etc. of Buford v. Medley*, 58 Ga. App. 48, 52 (1) (197 SE 494) (1938); *City of Rome v. Suddeth*, 116 Ga. 649, 651 (42 SE 1032) (1902).

---

[1] *Hammock v. City of Augusta*, 83 Ga. App. 217, 218 (63 SE2d 290) (1951), contains a brief historical sketch and held that since the section (then Code § 69-303) was a codification of the case law it would *not* be strictly construed as in derogation of the common law.

"The length of time . . . a defect must exist in order for an inference of notice to arise is ordinarily a question for the jury." *City of Waycross v. Howard*, 42 Ga. App. 635 (1) (157 SE 247) (1930). "If a city has notice of a dangerous defect in a sidewalk, it is its duty to exercise ordinary care in remedying the same or placing a safeguard about it." *Mayor, etc. of Buford v. Medley*, 58 Ga. App. 48, 53, supra. *City of East Point v. Christian*, 40 Ga. App. 633, 638 (151 SE 42) (1929); *City of Rome v. Brinkley*, 54 Ga. App. 391, 393 (187 SE 911) (1936). A further requirement in order for the city to be chargeable is that it had a reasonable opportunity to remedy the defect. *Mayor of Macon v. Morris*, 10 Ga. App. 298 (2) (73 SE 539) (1911); *Bush v. City of Gainesville*, 105 Ga. App. 381, 384 (124 SE2d 667) (1962). The *Morris* case, supra, noted that what is a reasonable time to remedy a defect is a mixed question of law and fact. 10 Ga. App. 298, 300, supra.

Thus, although our appellate courts have usually upheld jury determinations as to the issue if the city had a reasonable time to learn of the defect and repair, in several instances jury verdicts have been overturned. The Supreme Court held in *Mayor of Jackson v. Boone*, 93 Ga. 662, 666 (3) (20 SE 46) (1894) that: "An impracticable or unreasonable amount of inspection should not be required of the [municipal] corporation, but only such as prudence, good sense and reason make necessary." See *City of Oglethorpe v. English*, 60 Ga. App. 5, 7 (1) (2 SE2d 733) (1939). In the *Boone* case the place where plaintiff was injured had been inspected the night before and the court held that notice could not be inferred. Other cases of this genre include: *City of Dawson v. McGill*, 28 Ga. App. 300, 302 (111 SE 75) (1922), objects placed "only a few hours previous" to plaintiff's injury; *Bencke v. City of LaGrange*, 46 Ga. App. 723 (169 SE 63) (1933), bridge washed out between time plaintiff crossed it going to movie and time he returned, nonsuit granted; *City of Barnesville v. Sappington*, 58 Ga. App. 27 (197 SE 342) (1938), pile of brush seen by a witness about two and one-half to three hours before plaintiff injured; *Boney v. City of Dublin*, 145 Ga. 339 (89 SE 197) (1916), fact that banana peel was dried and browned, in absence of showing length of time on street, failed to show negligence, demurrer sustained.

Guided by the foregoing authorities, we now consider the factual situation in this case. On September 30, 1980, between 6:30 and 6:45 a.m. Hightower boarded a MARTA bus and as he was making his way to a seat the bus struck a "bump" or dip which threw him violently against the bus and to the floor. It was a rainy day. According to the bus driver, after picking up Hightower and stopping at a traffic sign, she was gradually accelerating the bus to a speed of no more than 15 m.p.h. when a portion of the street collapsed. This caused loss of brakes and power and required emergency measures to finally stop

the bus. Because of the rain and puddles on the street surface the driver saw nothing prior to the incident which she testified occurred at 7:00 a.m.

Dr. Wily, a resident of Canter Road, testified that on September 30, noticing the water pressure was gone, he called the water department and reported "you have a break in the main on Canter Road." Wily stated a few minutes later he heard the "bus hit very hard." Wily was unsure whether he called about 6:05 a.m. or 7:05 a.m. but when cross-examined he stated he called again after hearing the bus make a "really loud noise" and that the second call was probably less than five minutes after the first. Then he went outside and directed traffic around the bus.

The water department had no record of a call from Wily on that morning but according to Clackum, who was in charge of the crew which went to the scene to make repairs, a Mr. Hutchinson called at 7:10 a.m. to report a loss of water pressure. The message was given to Clackum who assembled a crew and left at 7:30 a.m.

Both plaintiff and MARTA urge that since there was evidence of a call at 6:05 a.m. and the impact occurred at 7:00 a.m. a jury was authorized to infer that the city had notice. Although Wily may have indicated he called at either 6:05 or 7:05 a.m., the important point is that the call was within five minutes of the incident. The discrepancies as to the time notwithstanding, the vital factor was the span of time involved and not the precise hour clocking. Even in this era of rapid communication we are not prepared to hold that 5 minutes is a sufficient period to give the city a reasonable time to provide a warning or safeguard the street. Thus, the recited facts would not sustain the jury's finding of liability against the city and imposition of damages thereof.

Was there any other evidence of the prior existence of the defect so as to authorize a finding that the city should reasonably have known of it? The city's assistant superintendent of construction and maintenance for the water department investigated the site at 10:00 a.m. the day of the incident. A letter he wrote stated that on survey of the area "a crack between the curb and street pavement was found and there was evidence that surface or rain water had undermined the pavement along side the storm sewer cross drain. This undermining could have caused the cavity under the street pavement." Both in the letter and in testimony this witness declined to offer any opinion as to the cause of the cavity or of the collapse. He did refer to the crack in the pavement which was 7 to 8 feet in length and up to about ½ inch wide and was some distance away from where the pavement collapsed. He stated the crack could have been there 10 minutes before he saw it (at 10:00 a.m.) to a maximum of two or three days. An expert witness for the city, who investigated three years after the

occurrence, theorized that there was a small leak in the water main which hollowed out the area around and beneath the pipe. He estimated that this took place over a considerable period of time and undermined the area to such an extent that the bus passing over the area collapsed the pavement. This witness believed that the crack opened up after the bus punctured the street.

There was no eyewitness testimony as to any apparent or observable defect on the road. The city's expert investigator opined that the leak which he theorized as the cause might have been discovered by monitoring water usage. The only other evidence as to the possibility of prior knowledge would arise from the city superintendent stating the crack could have been there "no more than 72 hours or three days at the most."

*City of Barnesville v. Sappington,* 58 Ga. App. 27, 29, supra, relied upon by the city, recites that the issue as to a sufficient length of time "should be generally left to the determination of the jury, unless it is plain and palpable, as a matter of law, that such defect or obstruction had not existed for a sufficient length of time to charge the municipality with negligence in connection therewith." The court there noted that the length of time which must elapse will vary according to the location and nature of the defect.

Here the fact there was a crack in the pavement at 10:00 a.m. on September 30 does not establish when the crack first appeared. "The doctrine of continuity, that is, that a state of things proved to have once existed is presumed to have continued to exist until a change or some adequate cause of change appears . . . does not include a presumption either that something shown to exist will continue in the future or *that it had previously existed.*" (Emphasis supplied.) *Glenn v. Tankersley,* 187 Ga. 129, 130 (7) (200 SE 709) (1938). Accord *McCluskey v. American Oil Co.,* 224 Ga. 253, 254 (161 SE2d 271) (1968).

Did the testimony of the city superintendent as to how long the crack existed have probative value so as to infer notice to the city of some problem and possibly a cavity forming, below the street?

A verdict cannot stand which is dependent upon testimony based on guess, speculation and conjecture. *Bankers Health &c. Ins. Co. v. Fryhofer,* 114 Ga. App. 107, 110 (1) (150 SE2d 365) (1966). Accord *Merritt v. Dept. of Transp.,* 147 Ga. App. 316, 320 (3) (248 SE2d 689) (1978) (reversed as to Division 4 only *Dept. of Transp. v. Merritt,* 243 Ga. 52 (252 SE2d 508) (1979)). This court pointed out in *Fryhofer,* supra at p. 111: "While it is true that an expert may give his opinion without stating the facts upon which it is based, yet when the basis of his opinion is given and it appears that it is wholly speculative or conjectural, it must follow that his opinion is without foundation and has no probative value."

The superintendent, while declining to give an opinion as to how

long the water main leak existed, affirmed that he did have an opinion regarding "how long this crack that . . . [he] testified to existed prior to September 30th . . ." Despite this, the tenor of his remarks concerning the crack was such as to indicate that his opinion was based on guesswork and speculation. Nevertheless, he did state his opinion was predicated on "[t]he condition of the street, the pavement was not raveled off." In view of this statement plus his reaffirmance of such opinion, the evidence is considered as being more than a scintilla and not totally without probative value.

Thus, if the crack was in existence for 72 hours or 3 days would this furnish a basis for imposing liability on the city? The crack itself was not the defect and was located several feet from the point where the pavement collapsed under the weight of the bus. The expert testimony was that considering the rainfall at that time, three days was not a sufficient time for surface or rainwater entering the crack to have undermined the road at the point where the road collapsed. There was nothing to indicate that if the city had investigated the crack that the cavity which caused plaintiff's injuries would have been discovered. Even if the jury determined that the city should be charged with sufficient time to have discovered the crack, there would be no basis to infer the city knew of and had sufficient time to remedy the actual defect.

Since the evidence does not sustain the verdict, it was error to overrule the city's motion for judgment n.o.v.

*Judgment reversed with direction that judgment be entered for the defendant city. Deen, P. J., and Pope, J., concur.*

DECIDED NOVEMBER 7, 1985 —
REHEARING DENIED DECEMBER 3, 1985 — 

*Robin G. Schurr, Marva Jones Brooks, Mary Carole Cooney, Jo Avery Crowder,* for appellant.

*John H. Ridley, Jr., Thomas G. Sampson, Myra H. Dixon,* for appellee.