## 73198. MILNER v. MILNER.
(353 SE2d 628)

DEEN, Presiding Judge.

Donnis Milner and Kenneth Milner, parents of a daughter born in September 1980, were divorced in 1983. Pursuant to the divorce decree, the mother was awarded custody of the child and the father was ordered to pay $35 per week in child support. In February 1984 Donnis Milner filed a petition seeking an increase in child support and, at approximately the same time, Kenneth Milner filed a petition seeking a change of custody, alleging a material change of circumstances. After a bench trial on Kenneth Milner's petition, the court awarded custody to the father, and Donnis Milner appealed to this

court. The case was remanded for preparation of findings of fact and conclusions of law. *Milner v. Milner*, 177 Ga. App. 164 (338 SE2d 757) (1985). The trial court complied, and Donnis Milner's application for a discretionary appeal was granted.

1. The trial court found that the mother is employed at a "Jiffy-Mart"-type store and that she works the evening shift, which ends at 11:00 p.m. on weekdays and as late as 2:00 a.m. on Fridays. While she works, she leaves her daughter with various neighbors who reside in the same mobile home park or with friends in the community. Donnis Milner permitted a divorced friend and her two children to reside in her two-bedroom mobile home, resulting in very crowded living conditions. The court further found that the mother was romantically involved with a man who spent the night with her in the presence of the child, and that this man "has engaged in the violent act of shooting his former wife as a result of an accusation by the former wife that [he] had molested his minor daughters." The court also cited evidence of neglect in that the child wandered away from the mobile home while the mother was taking a bath, and she was almost struck by an automobile. On other occasions she was permitted to wander about the mobile home park. The court also found that the mother was not attentive to the child's nutritional needs and failed to keep her clean. She further neglected the child by leaving her with a babysitter for extended periods of time without adequate provision for clothing and did not notify the sitter as to her whereabouts or when she would return. A babysitter testified that the mother had made threats to harm Kenneth Milner and his present wife. The mother admitted entering a guilty plea to the offense of selling beer to a minor at her place of employment.

The court further found that Kenneth Milner and his wife had purchased a two-bedroom home and were capable of properly caring for the child. She had spent ninety-two days with them in 1983 and had a good relationship with her stepmother. Phyllis Milner was a full-time housewife who was able to look after the child and had provided for all of the child's needs while in her care. Kenneth Milner had worked at his place of employment for fifteen years, and he and his wife regularly took the child to church when she was in their care.

All of the court's findings of fact are supported by the evidence except the one pertaining to the crowded living conditions in the mobile home. Donnis Milner testified that the arrangement with her friend was only temporary until the friend could find living quarters, and that she had moved out. The court's findings that the mother neglected the child and failed to supervise her adequately, and that her boyfriend was an undesirable person for the child to associate with were supported by the evidence. See *Gibson v. Pierce*, 176 Ga. App. 287 (335 SE2d 658) (1985). Although the mother contends that

this man no longer spends the night with her in the child's presence, she has admitted that she is in love with him. Therefore, there was reasonable evidence of a material change of conditions affecting the child's welfare, and the trial court properly exercised its discretion by granting the father's petition for a change of custody. *Blackburn v. Blackburn*, 168 Ga. App. 66 (308 SE2d 193) (1983).

2. Appellant's contention that the testimony concerning her lover's legal problems with his former wife was hearsay and improperly considered by the court is probably correct, but we find it to be harmless error for the court to have considered it. Appellant testified that her lover was arrested for shooting his wife three times, that the shooting was not intentional and that he had been accused of molesting his own little girl. She testified that she had discussed the charges with her boyfriend and that he claimed they were untrue. At no time did appellant's attorney object to any of the questions posed to her by appellee's counsel about these events. We find that the court's consideration of this evidence did not contribute to its judgment, as there was ample evidence of other conduct by appellant which would justify the change in custody to the father. The mother freely admitted that her boyfriend spent the night with her in her home while the child was present. This behavior falls within the scope of improper behavior in the presence of the child as set forth in *Gibson v. Pierce*, 176 Ga. App. 287, supra. Moreover, there was ample evidence of neglect of the child when she was left with a babysitter for extended periods of time without leaving the child adequate clothing or notifying the sitter when she would return. In one of these instances, she placed the legal problems of her boyfriend ahead of the needs of her child by informing the sitter that she had an emergency. She did not return or call the sitter. The sitter did not see or hear from appellant the rest of the day or that evening and was finally able to contact her the next afternoon. The mother did not provide any clothing for the child during the entire period. On another occasion, when the mother's boyfriend was released from the hospital, appellant left the child with the sitter for thirty-eight hours without providing clothing for the child and she told her she had to take Mr. Burns to pick up a truck and then have dinner with friends.

There was also evidence that the child was left unsupervised and permitted to wander away from home while the mother was taking a bath. The child was almost struck by an automobile when she stepped off the curb. A police officer testified that the three-year-old child was found over a mile from her home on a cold day in January and was dressed in "skimpy attire." The driver of the automobile testified that the little girl was clad only in a T-shirt and was not wearing shoes. Other evidence of neglect included the failure of appellant to take the child to the doctor when she was ill, and that appellant had made

threats against appellee and his wife.

An analysis of the evidence shows that there was ample evidence to justify the court's decision to order a change of custody in the best interests of the child.

*Judgment affirmed. Carley, J., concurs. Birdsong, C. J., Banke, P. J., Sognier and Beasley, JJ., concur in the judgment only. McMurray, P. J., Pope and Benham, JJ., dissent.*

BENHAM, Judge, dissenting.

I respectfully dissent from the majority's affirmance of the trial court's order which changed custody of a 3-1/2-year-old female child from appellant mother to appellee father. My review of the record and transcript of the hearing leads me to conclude that there is no reasonable evidence to support the trial court's conclusion that there has been a change of condition affecting the welfare of the child. *Gazaway v. Brackett*, 241 Ga. 127, 128 (244 SE2d 238) (1978).

In its order, the trial court found the following to be detrimental to the child: the varying nature of appellant's work schedule; the "crowded residential setting" in which the child and her mother lived; the "romantic relationship" between appellant and her boyfriend, Mr. Burns; the neglect the child suffered as evidenced by her wandering off from her home to a street approximately a mile away while appellant was bathing; the fact that appellant "has not been as attentive to the nutritional needs of the minor child and has failed to keep the child's clothes as clean as is desirable"; and that appellant has left the child with a babysitter for periods exceeding 24 hours without making adequate provision for clothing the child.

I recognize the broad discretion with which a trial court is vested in child custody matters (OCGA § 19-9-3; *In the Matter of J. S. S.*, 175 Ga. App. 361 (4) (333 SE2d 417) (1985)), and am mindful of the limited role the appellate court plays in reviewing the determination of the trial court. *Webb v. Webb*, 245 Ga. 650 (3) (266 SE2d 463) (1980); *Blackburn v. Blackburn*, 168 Ga. App. 66, 71 (308 SE2d 193) (1983). However, I cannot find reasonable evidence to support the trial court's findings of fact and, therefore, I dissent.

As the majority noted, the finding that the child lived in a "crowded residential setting" was not supported by the evidence. Nor was there evidentiary support for the finding that appellant's work schedule has varied to such an extent that the child has been harmed. Appellant testified she worked at a local convenience store from 3:00 p.m. to 11:00 p.m., Monday through Thursday, and 3:00 p.m. to 2:00 a.m. on Friday. The testimony concerning her varying hours related to her former employment.

The trial court's conclusion that appellant had neglected her child centered around the fact that the three-year-old child had wandered from her home without appellant's knowledge and was

found approximately one mile away, where she told the woman who found her that she was "going to the fair." Appellant testified she had been taking a bath when the child managed to open a door and leave the mobile home. Appellant stated that, in order to prevent a recurrence of the incident, she had had additional locks placed on the doors the very afternoon the child wandered off. The Thomas County Department of Family and Children Services established a "neglect" protective services file based on the incident, and the DFACS county director testified that the department was "satisfied that [appellant] corrected the problems . . . and [was] in the process of closing her case. . . ."

The trial court also found that appellant had permitted the child "to wander about the mobile home park on numerous occasions. . . ." The only evidence with regard to this conclusion emanated from the child's babysitter, who lived three to five trailers away from appellant in the mobile home park and who reported that she discovered the child "playing in the mailboxes" and strewing about the pieces of mail. The babysitter recounted that on several occasions, the child had come alone to the sitter's trailer and played with other children. This testimony does not reveal either "numerous occasions" or evidence of "wander[ing] about the mobile home park."

The trial court concluded that there was "evidence that [appellant] has not been as attentive to the nutritional needs of the minor child and has failed to keep the child's clothes as clean as is desirable." Pretermitting a discussion on the subjective nature of the standard used by the trial court is the dearth of evidence to support the findings. All witnesses who were asked testified that the child was healthy, and appellant testified that her 3-1/2-year-old daughter weighed 35 pounds and was "as healthy as a horse." Even though the babysitter testified that "the child was always acting like she was hungry when she came to me," there was no evidence that appellant did not meet her child's nutritional needs.

Testimony concerning the child's personal hygiene came from the babysitter, who described her clothing as "stained," and from the child's stepmother, who described it as stained and foul. Appellant testified she washed the child's clothing frequently and, while some of the garments were stained, they were clean. A neighbor of both appellant and the sitter testified that the child's clothing was clean when she arrived at the sitter's, but "then she gets out there playing with the other kids and they get dirty." The stepmother testified that she and appellee picked up the child from the babysitter's home. The record contains no reasonable evidence that the child's stained and dirty clothing is a result of appellant's neglect of the child.

The trial court also pointed out that "there were occasions" when appellant left the child with the babysitter for more than a day at a

time without making adequate provision for clothing for the child. The one instance related by the trial court in its order occurred when appellant ran to the babysitter's trailer, asked her to keep the child and said, "I've got to go, I'll explain to you later." The babysitter later learned that appellant's boyfriend had been involved in a shooting. The sitter stated that she had no clothing for the child (other than that which she was wearing when appellant dropped her off) until appellant came by and left some. On the night before the boyfriend was released from the hospital, the babysitter agreed to care for the child, and appellant told her she would be late picking up the child the following day. The sitter testified that she kept the child 38 hours without a change of clothing. These two occasions, one of them being an emergency, were the sum and substance of the trial court's conclusion that the child was left with the sitter without adequate clothing.

It appears that, to the trial court, appellant's romantic relationship with Mr. Burns was the aspect of appellant's life most detrimental to the child's best interests. However, the detrimental aspect of the relationship was not "inappropriate conduct in the presence of the child" (compare Gibson v. Pierce, 176 Ga. App. 287 (335 SE2d 658) (1985)), but, as stated by the trial court in its order, the fact that the boyfriend "has engaged in the violent act of shooting his former wife as a result of an accusation by the former wife that [the boyfriend] had molested one of his daughters." Thus, the trial court found that appellant's boyfriend had shot his former wife, who had accused him of molesting one of their daughters. There is, however, not one shred of probative evidence to support the trial court's conclusion. Every mention of this incident was a hearsay report since neither the boyfriend nor his former wife testified, and each witness questioned about the incident named rumor or appellant as his/her source of information. Appellant testified that she did not know how it happened, because she was not present when the incident occurred. Thus, every mention of the shooting incident and the molestation accusation was rank hearsay, completely without probative value. The majority concludes that "the [trial] court's consideration of this evidence did not contribute to its judgment . . ." I must emphatically disagree. In addition to including in its findings of fact that Mr. Burns had, indeed, shot his former wife who had accused him of molesting one of his daughters, the trial court ordered appellant to insure that the minor child was never to be in Mr. Burns' company unless appellant was also present and able to observe the child. Appellant lost custody of her child in part because she was friendly with a man who purportedly had been accused of aggravated assault and child molestation. Despite the lack of probative evidence concerning such heinous charges, the trial court was so disturbed by Mr. Burns'

alleged behavior that it ordered that appellant's minor daughter was never to be left alone with Mr. Burns. I hardly think the hearsay evidence concerning Mr. Burns did not contribute to the trial court's judgment.

Since I cannot find reasonable evidence to support the trial court's findings, I dissent from the affirmance of that court's order changing custody.

I am authorized to state that Presiding Judge McMurray and Judge Pope join in this dissent.

DECIDED FEBRUARY 12, 1987.

*R. Bruce Warren*, for appellant.
*Donald D. Rentz*, for appellee.