74153. DIXON v. DIXON.
(360 SE2d 8)

McMURRAY, Presiding Judge.

This is a child custody case. The father and mother were divorced on April 17, 1981, and custody of the child, an infant at the time of the divorce, was awarded to the mother by agreement. A few years later, the father sought a change of custody. A hearing was held in the Juvenile Court of Bibb County on May 6, 7 and 8, 1985, and at the conclusion of the hearing, the juvenile court took the case under advisement. Ten months later, on March 12, 1986, the juvenile court entered an order changing custody to the father. In its order, the juvenile court found "that the home and the care of the child would be suitable except for the fact that the mother is cohabiting with a man to whom she is not married while the child is living with her." Based on this finding, the juvenile court concluded that the welfare of the child had been affected by a material change of condition and that it was in the child's best interest to change custody to the father. We granted the mother's application for a discretionary appeal. *Held:*

"The mind is incapable of complete recall after a long lapse of time. On a close case there is less likelihood of error if they are decided by judges who try them while the case is fresh in his mind. Juries are required to do this. It would be a substantial contribution to our system if judges would follow, as closely as possible, that system. Long delays in disposing of litigation in civil and criminal cases are an ever increasing cause of concern, not only to the judiciary, but to the public. One of the oldest of judicial adages is 'justice delayed is often justice denied.'" *McLain v. McClain,* 305 S2d 884, 885 (Fla. App. 1975). This adage is most apt in cases of this kind. When the welfare of a child is at stake, an order regarding custody of the child should be rendered with deliberate speed.

The mother contends we should vacate the judgment of the juvenile court simply because of the ten-month delay in the rendition of the judgment. We can find no authority to support this contention. We have undertaken a thorough review of the record, however, because the delay in the rendering of the judgment gave us cause for concern. See *McLain v. McClain,* 305 S2d 884, 885, supra.

We find the evidence of cohabitation to be scanty. Moreover, it

was sharply conflicting. The mother denied that she cohabited with a man to whom she was not married. The man testified that he lived elsewhere. Some neighbors were of the opinion that the man did not live with the mother. Other neighbors, however, opined that he did. As one neighbor explained, "He was just always there. . . ." This evidence, with all reasonable deductions and inferences therefrom, was sufficient to authorize a change of custody in the present case. We cannot say the juvenile court abused its wide discretion by changing custody to the father. *Gibson v. Pierce*, 176 Ga. App. 287 (335 SE2d 658); *Bell v. Bell*, 154 Ga. App. 290 (2) (267 SE2d 894).

Relying upon OCGA § 19-9-23 (c) (2), the mother asserts that the father impermissibly sought a change of custody in response to a complaint for modification in which the mother sought an increase in child support payments. This assertion is without merit. Simply put, a complaint for modification of support is not an "action or motion seeking to enforce a child custody order." OCGA § 19-9-23 (c) (2).

*Judgment affirmed. Birdsong, C. J., Deen, P. J., Banke, P. J., Carley, Sognier, Pope and Benham, JJ., concur. Deen, P. J., also concurs specially. Beasley, J., dissents.*

DEEN, Presiding Judge, concurring specially.

While concurring fully with the majority opinion, it is appropriate to make additional comments.

The majority opinion properly notes the authoritative, apt, and ageless adage that "justice delayed is often justice denied." While seeking to decide cases properly and accurately is the primary goal of our judicial system, it is no less important that it be done promptly and with deliberate speed.

The dissenting opinion also endorses the urging of rendering prompt decisions in child custody cases, and, in fact, suggests that these type cases ought to have priority over others "all along the judicial path." The dissent goes so far as to charge that a slow judicial system may even be "complicitous in the further harm" to children in custody cases. However, can this court say that child custody cases are more important than (1) criminal cases (where one's liberty is at stake), (2) workers' compensation cases (where an injured claimant needs medical or financial assistance to survive), or (3) contempt cases (where one may have to spend time in the jail)? Selective preference of any category of cases would only result in delaying other cases which have been filed first and actually deserve priority.

The simple solution, of course, is to decide all cases whenever possible in the trial and appellate courts properly, promptly, and "with deliberate speed." This could be accomplished by *reduction of the time periods between* (a) the date the case is filed, (b) the date the matter is tried or argued, and (c) the date of decision. OCGA § 9-

11-1 sets forth the standard of a "just, speedy and inexpensive determination." We cannot improve upon the words of one of Georgia's most distinguished appellate justices, Logan Bleckley: "In the administration of justice there ought to be correctness, clarity and cheapness . . . Progress is the realization, in short time, of what formerly occupied long time." Ga. Bar Assn. Annual Report, p. 25 (August 13, 1884).

I would affirm the judgment of the trial court, as this case is controlled by our recent whole court case of *Gibson v. Pierce*, 176 Ga. App. 287 (335 SE2d 658) (1985). In that case, seven out of nine judges acknowledged that, as in the instant case, "implications and inferences of possible potential criminal fornication, which is a misdemeanor" (or a case involving adultery or incest) cannot be ignored where the best interests of a child are at issue. See also *Milner v. Milner*, 181 Ga. App. 760 (353 SE2d 628) (1987). Groans and "moans and love-making noises" were heard by a neighbor in the instant case. This might be somewhat scanty, and perhaps not the strongest case, but it is strong enough!

BEASLEY, Judge, dissenting.

I respectfully dissent.

I wholly support the majority's urging that decisions in child custody cases be rendered promptly. Perhaps they ought even to be given a priority over others, all along the judicial path. There is, e.g., a statutory time mandate for decisions on motions. OCGA § 15-6-21. Even where no change in custody is ultimately ordered, the child suffers because of the effect which limbo has on the relationship among the family members and towards the child. Where a change of custody is finally ordered, the delay usually means the child has been subjected to more of the selfsame harm causing the change, during the interim created solely by the slow wheels. Thus the judicial process itself contributes to the ongoing harm to the child. This all can be exacerbated by temporarily switching custody back and forth via supersedeas grants and denials. OCGA §§ 15-11-64; 5-6-35 (h).

Here, unless the father temporarily took custody between the trial court's denial of the mother's request for supersedeas and our grant of supersedeas (a period of twenty-one days), and assuming the father did not take custody immediately upon receipt of the trial court's appealed-from order of March 12, 1986, the child has been in the custody deemed not in his best interest, for nearly three years from the filing of the petition setting forth the grounds. He is now age eight and was then about five.

The final result is that the change of custody of the child will be effected some three years after the mother's alleged cohabitation with a man not her husband, which cohabitation is the ground for the or-

dered change. If that environment has continued, the judicial system has been complicitous in the further harm to the child.

I also agree that there is no authority to reverse the judgment of the trial court on the ground of the delay *per se*. The Uniform Juvenile Court Rules make no such time requirements. 254 Ga. 757, as amended, 255 Ga. 739. The closest legal basis may be OCGA § 19-9-21 (a) (4), (7), and (b), but it does not constitute authority for the proposition. Nor had the mother filed a motion to which OCGA § 15-6-21 would have applied, or sought the awkward and cumbersome mandamus. *Graham v. Cavender*, 252 Ga. 123 (311 SE2d 832) (1984). Although the state constitution declares that one of its purposes is to "promote the interest and happiness . . . of the family" and requires "uniform court rules . . . which shall provide for the speedy, efficient, and inexpensive resolution of disputes and prosecutions," it imposes time constraints only on the appellate courts. Ga. Const. 1983, Preamble; Art. VI, Sec. IX, Pars. I and II.

Where, then, do I dissent? In the conclusion that the evidence was sufficient to authorize a change of custody.

The law is that "[o]nce a permanent award of child custody has been made, when the non-custodial parent seeks to change custody, the trial court must determine whether there has been a material change of conditions affecting the welfare of the child. [Cit.]" *Gibson v. Pierce*, 176 Ga. App. 287 (335 SE2d 658) (1985). The opinion in *Robinson v. Ashmore*, 232 Ga. 498, 501-502 (II) (207 SE2d 484) (1974) speaks of the necessity of showing a "material effect" on the interest and welfare of the child and quotes from *Handley v. Handley*, 204 Ga. 57, 59 (48 SE2d 827) (1948), which describes it more fully as change "which might substantially affect the health, happiness, or welfare of the children." It is emphasized repeatedly in the cases that "any consideration of custody must always be made in the light of the best interests of the child involved . . . primary consideration [must be given] to the welfare of the child." See OCGA § 19-9-3.

In the instant case the court found that the mother's home was suitable "except for the fact that the mother is cohabiting with a man to whom she is not married while the child is living with her," and on that basis found a material change of conditions adversely affecting the welfare of the child. True, it found changes in the father's conditions to be favorable. But that itself would not be a valid ground on which to change custody.

I assume for the purpose of this dissent that the alleged cohabitation negatively affected the child's welfare, as did the trial court, although that poses another legal problem. The court must make a finding that the change in circumstances "had in fact had a material adverse effect on the child," not only that there has been a change of conditions. *Evans v. Stowe*, 181 Ga. App. 489, 491 (4) (352 SE2d 811)

(1987); see *Howard v. Fincher*, 161 Ga. App. 411, 413 (288 SE2d 338) (1982).

The evidence that the mother "is cohabiting" (when? at the time of the hearing in May 1985 or at the time of the decision in March 1986 or at the time the petition was filed in August 1984, or at any of these times and continuing as in *Bell v. Bell*, 154 Ga. App. 290 (267 SE2d 894) (1980)) is less than scanty. The transcript, which is now in the record although it was not when the trial court made its decision, shows that the evidence is purely speculative.

The only evidence that appellant and one Ethridge dwelled or lived together as husband and wife was not legally cognizable. The father said the child said Ethridge had lived with them at a previous apartment but conceded that the child's statement could not be taken for the truth of it. The mother and Ethridge and Ethridge's daughter steadfastly denied it. The father's counsel conceded that his private investigator's testimony should be discounted. The resident manager and the neighbor offered no evidence of cohabitation, just their conclusory lay opinions, although the neighbor heard what she believed to be lovemaking once. Such evidence is an insufficient foundation for a finding of fact. *City of Atlanta v. Hightower*, 177 Ga. App. 140, 143 (338 SE2d 683) (1985); *Bankers Health &c. Ins. Co. v. Fryhofer*, 114 Ga. App. 107, 110 (1) (150 SE2d 365) (1966).

" 'Though the trial judge is given a discretion, he is restricted to the evidence and unauthorized to change the custody where there is no evidence to show new and material conditions that affect the welfare of the child. (Cit.)' [Cit.]" *Evans*, supra at 491.

I would for this reason reverse.

DECIDED JUNE 16, 1987 —
REHEARING DENIED JULY 21, 1987 — 

*Arline S. Kerman, W. Edward Meeks*, for appellant.
*Carl A. Veline, Jr.*, for appellee.