## 76234. BESS v. THE STATE.
(369 SE2d 784)

CARLEY, Judge.

Appellant was tried before a jury and found guilty of two counts of aggravated child molestation, one count of statutory rape, and one count of child molestation. Appellant appeals from the judgments of conviction and sentences entered on the jury's verdicts.

1. "Under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), '(i)f the defendant can establish a prima facie case of racial discrimination in the prosecutor's exercise of his peremptory challenges, the prosecutor must explain his exercise of peremptory challenges, and demonstrate that racially neutral criteria prompted the exercise of his peremptory challenges.' [Cit.]" *Hillman v. State*, 184 Ga. App. 712 (1) (362 SE2d 417) (1987). In response to appellant's *Batson* motion, the trial court ruled that a prima facie case of racial discrimination had been made and it then asked that the prosecuting attorney give an explanation for her exercise of peremptory strikes to remove eight of nine potential jurors who were black. After hearing the prosecuting attorney's explanations for striking the eight black potential jurors, the trial court found no *Batson* violation, holding that the explanations which had been offered were of sufficient racial neutrality so as to rebut appellant's prima facie case of racial discrimination. Appellant enumerates the trial court's ruling in this regard as error.

"In order to rebut a prima facie case of racial discrimination in the exercise of peremptories, the prosecutor must explain each peremptory challenge of a black prospective juror. The explanation 'need not rise to the level justifying exercise of a challenge for cause,' but it must be 'neutral,' 'related to the case to be tried,' and a ' "clear and reasonably specific," explanation of his "legitimate reasons" for exercising the challenges.' [Cit.] The explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes, and, as well, in light of the strength of the prima facie case. The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion explanations, and by the strength of the prima facie case." *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987). Appel-

lant's prima facie case was not a weak one. As noted, of the forty-two prospective jurors nine were black and, of those nine, all but one was eliminated by peremptory strikes. Accordingly, our review of the trial court's acceptance of the prosecuting attorney's reasons for using her peremptory strikes to eliminate eight black prospective jurors must be from the perspective of a relatively strong prima facie case of racial discrimination in the employment of those strikes.

On appeal, appellant concedes that it is only as to seven of the eight black prospective jurors who were eliminated that he questions the trial court's finding of a racially neutral explanation. "Although the prosecutor may not strike from assumptions based solely upon race, he 'may strike from mistake, or from ignorance, or from idiosyncracy.' [Cit.]" *Killens v. State*, 184 Ga. App. 717, 719 (2) (362 SE2d 425) (1987). That the prosecuting attorney in this case used peremptory strikes to eliminate two of the seven black veniremen in question because they stated that they knew appellant is a racially neutral justification and the trial court was authorized so to find. See *McCormick v. State*, 184 Ga. App. 687, 688 (362 SE2d 462) (1987). Likewise, the trial court's acceptance as a sufficient explanation that another black veniremen had been stricken from the jury because there was reason to believe that he might have been the subject of a criminal investigation was not error. See *McCormick v. State*, supra at 689. Three of the black female veniremen were stricken from the jury on the basis that, in the opinion of the prosecuting attorney, they would be "good" jurors to serve in certain other criminal cases which might possibly be reached during the period of their jury duty. Specifically, the prosecuting attorney expressed a belief that, because of their apparent conservative nature, two of the women would be more "appropriate" jurors, from the State's point of view, in a drug case wherein the defendant was a black female, whereas it was believed that the third, who lived in a high crime area, would be a better juror in upcoming cases which dealt with drugs and stolen property. In addition, the prosecuting attorney felt that the third female, as the result of her age, might be exceptionally offended by the nature of the testimony in this case. For purposes of rebutting a *Batson* prima facie case, those reasons are all sufficiently racially neutral and the trial court was authorized to make such finding. See generally *Hillman v. State*, supra. "The trial court's findings are, of course, entitled to 'great deference,' [cit.], and will be affirmed unless clearly erroneous." *Gamble v. State*, supra at 327. Under this standard, we find that, as to these six prospective jurors in question, the prosecuting attorney's reasons were racially neutral and we affirm the trial court's findings that, as to them, appellant's prima facie case of racial discrimination was rebutted.

It is the explanation given as to the seventh black prospective

juror which presented the trial court the most difficulty and which, on appeal, has likewise given us the most concern. This prospective juror was a black female and the reason given for the use of a peremptory strike to remove her from appellant's jury was that she was over forty and had no children. The prosecuting attorney was of the opinion that, from the State's point of view, a childless female who was past her prime child-bearing years would not necessarily be an appropriate juror to serve in a case, such as this, wherein the alleged victim was a child. Our review of the record indicates that this ostensibly racially neutral explanation is weak, not on the merits of the explanation itself but on the existence of a factual premise to support the applicability of that explanation to the prospective juror. There is no affirmative support in the record for the conclusion that this prospective juror was childless. The prosecuting attorney apparently based her assumption that the prospective juror had no children merely on the fact that the juror was presently single. However, it would not necessarily follow from the fact that the prospective juror was presently single that she was also presently childless. Moreover, there is some doubt whether the marital status of the prospective juror as a single woman was itself a valid assumption on the part of the prosecuting attorney. However, the law provides that a prosecuting attorney's explanation, even if it is based upon mistake or ignorance, may be sufficient to rebut a prima facie *Batson* showing (see *Killens v. State*, supra), so long as it is not " ' "whimsical or fanciful" ' but is 'neutral,' 'related to the case to be tried,' and a ' "clear and reasonably specific," explanation of [the] "legitimate reasons" for exercising the challenges.' [Cit.]" *Gamble v. State*, supra at 327 (5). In this case, there is no contention that anything in the record would show that the prospective juror was *not* childless. Accordingly, it cannot be said that the explanation or, even if based upon mistake or ignorance, was whimsical or fanciful. Compare *Gamble v. State*, supra. Moreover, in response to an inquiry from the trial court, the prosecuting attorney stated that a childless white female of similar age would have been stricken in this case and there is nothing to indicate that this is not true. Compare *Gamble v. State*, supra. Accordingly, we hold that, notwithstanding the relatively "weak explanation" given for striking this particular juror, it was sufficient and that the trial court did not err in concluding that, as to all black prospective jurors eliminated by peremptory strikes, the State rebutted appellant's prima facie *Batson* showing. "A court charged with the duty of determining whether the prosecut[ing attorney] has rebutted a prima facie case may be less troubled by one relatively weak explanation for striking a black juror when all the remaining explanations are persuasive than where several of the prosecutor's proffered justifications are questionable." *Gamble v. State*, supra at 327 (5). "The duty of deciding whether the

defendant established intentional discrimination lies in the trial court. [Cit.] A trial court's finding of purposeful discrimination is a finding of fact which must be given deference by an appellate court. Ordinarily, great deference should be given to such a finding since it 'largely will turn on evaluation of credibility.' [Cit.] 'Thus, we may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous. [Cit.]' [Cit.]" *McCormick v. State*, supra at 688.

2. "[Appellant] contends the pre-evidentiary charge rendered by the trial court [contained an incorrect statement concerning the credibility of witnesses]. He also asserts that the trial court intimated an opinion concerning [his] guilt . . . in the pre-evidentiary charge. Our examination of the pre-evidentiary charge reveals no such defects. Moreover, a complete and accurate charge was given upon the conclusion of the evidence. Accordingly, we find no error. [Cits.]" *Phillips v. State*, 183 Ga. App. 194 (1) (358 SE2d 480) (1987).

3. Over appellant's hearsay objection, a social worker was allowed to testify that the victim had told her of having been sexually molested by appellant. The trial court overruled appellant's objection, specifically citing OCGA § 24-3-16 as the authority for its ruling. The trial court's ruling is enumerated as error.

OCGA § 24-3-16 provides that: "A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability." See *Sanders v. State*, 182 Ga. App. 581, 584 (3) (356 SE2d 537) (1987). Appellant contends that the trial court erroneously failed to make a specific finding on the record as to the reliability of the circumstances surrounding the statement. While the trial court made no such explicit finding, it did specifically base its decision to overrule appellant's objection upon the provisions of OCGA § 24-3-16. Accordingly, the trial court's ruling was a sufficiently implicit finding that the circumstances which surrounded the victim's statement to the social worker provided "sufficient indicia of reliability."

Appellant further contends, that the trial court's implicit finding that the circumstances provided a "sufficient indicia of reliability" was erroneous. However, the trial court was authorized to find that, considering the social worker's testimony as to the circumstances under which the statement was made to her, there was sufficient indicia of the victim's reliability.

4. Appellant enumerates as error the trial court's charge to the jury on the crime of simple battery as a lesser included offense. Ap-

pellant's contention is that, under the trial court's charge, the jury was instructed that it would be required to find him not guilty of *all* four counts charged in the indictment before it would be authorized to consider the issue of his guilt of the lesser included offense of simple battery. The record shows that the trial court instructed the jury that "there's a lesser included offense as to *each of these counts* and that is the offense of Simple Battery which I [have] given you the definition for. If you're not satisfied as to the guilt of the Defendant beyond a reasonable doubt as to *any of these four counts* which are charged in the bill of indictment, but do believe the Defendant is guilty of the offense of Simple Battery, [then mark the verdict form accordingly]." It is clear from the record that the trial court's instruction could not have misled the jury in its deliberations as to appellant's guilt of a lesser included offense.

5. Appellant's remaining enumeration relates to the fact that the victim overheard a discussion between the court and counsel with regard to appellant's offer to plea bargain. Appellant waited to make his offer until the trial court had first found, outside the presence of the jury, that the victim was, despite her age, a competent witness. Appellant then made his offer to plea bargain while the victim was still on the stand. Thus, if it was error to discuss the topic of appellant's plea bargain in the presence of the victim, it was error which was induced by appellant. Appellant, having made the initial tactical decision to await the determination of the victim's competency to testify, cannot benefit from the error, if any, that resulted from his further decision to offer his plea bargain immediately upon the establishment of the victim's competency. "A defendant will not be allowed to induce an asserted error, sit silently hoping for acquittal, and obtain a new trial when that tactic fails. [Cits.]" *Jackson v. State*, 234 Ga. 549, 553 (216 SE2d 834) (1975). " 'Induced error is impermissible and furnishes no ground for reversal. [Cit.]" *Garrett v. State*, 153 Ga. App. 366, 370 (4) (265 SE2d 304) (1980).

*Judgments affirmed. Sognier, J., concurs. Deen, P. J., concurs dubitante.*

Deen, Presiding Judge, concurring dubitante.

A brief statement of the facts is appropriate most of the time even in cases of child abuse, in order to gain a real understanding of what occurred in the case. Appellant was the boyfriend of the victim's mother. The latter had three other small children. The victim was eight years of age. She was found competent by the court, testified, and was cross-examined. The mother testified that her daughter admitted to her in front of defendant that he "messed" with her and that he did not deny it. She said defendant told Detective Conner that he "didn't know what he could have did because he was doing,

doing — when he was on *that stuff*." (Emphasis supplied.)

Anatomical drawings and explicit testimony were given, detailing forced acts of his placing his private parts, mouth, and tongue inside the body of the victim. Some argue and articulate that recital of even minimal facts in heinous drug, porn, obscenity, and sexual cases involving abuse of small children should not ever be necessary in deciding these types of delicate, emotional cases. One judge on our court recently opined: "While I find appellant's conduct reprehensible, I share Justice Smith's view, set forth in a dissenting opinion as follows: 'As a result of this being such an emotion-filled area of the law at this time, we are ignoring the time-honored rules of evidence and are creating new rules for child abuse and molestation cases in order to obtain convictions of those who are perceived guilty of those heinous crimes. . . . Those accused of other crimes should not be provided greater evidentiary protection than those accused of child molestation.' *State v. Butler*, 256 Ga. 448, 454-455 (349 SE2d 684) (1986)." *Ward v. State*, 186 Ga. App. 503, 507 (368 SE2d 139) (1988).

It is the view of this writer that many times those accused of child abuse and molestation are actually provided greater evidentiary protection than those accused of other crimes, i.e., burglary of a bank and embezzlement of an insurance company. Usually those convicted of the latter type crimes are faced publicly with detailed recital of the facts of their misdeeds in written opinions, and further the opinions are usually 'always reported for the bench, bar, and public to see and know what they have done to the bank and insurance company. In the former cases, on many occasions, probably in deference to the youthful victim, the facts and acts of defendants are swept under the rug or are scantily mentioned, if at all; furthermore, many times the opinions are unreported under our Rule 37 (b), a type of further censorship of facts, so that no one really knows what occurred to the innocent, abused children, as shown by the trial transcript. "[M]ost of our [obscenity] decisions . . . have been given without opinion and have thus failed to furnish . . . guidance." *Jacobellis v. Ohio*, 378 U. S. 184, 200 (84 SC 1676, 12 LE2d 793) (1964). See *Motes v. State* (Case No. 75795, unpublished opinion, decided April 28, 1988) and many other similar type cases unreported under Rule 37 (b). One might inquire, "How many ways can sodomy be committed?"; or, "How many ways can one rob a bank?" Should facts in the former be consistently omitted and unreported, while those in the latter are always repeated and reported?

Our court cannot treat the victims in emotion-filled areas of the law, such as child abuse, differently from victims in other areas of criminal law. Likewise, all criminal defendants coming before this court must be given the same protection, not less, not greater, but all must be fed substantially out of the same spoon. We must not let it

be said that "the judicial system has been complicitous in the further harm to the child." *Dixon v. Dixon*, 183 Ga. App. 756, 759 (360 SE2d 8) (1987). To keep quiet as to the facts, acts and attacks (whether involving sex, drugs, pornography) is precisely that to which the actor or attacker ardently aspires.

DECIDED MAY 4, 1988 —
REHEARING DENIED MAY 18, 1988 — 

*Michael S. Bennett, C. Richard Williams, Jr.*, for appellant.
*H. Lamar Cole, District Attorney, Robert T. Gilchrist, David Miller, Stephen J. Pearsall, Assistant District Attorneys*, for appellee.