A92A1394. STROZIER v. CLARK.
(424 SE2d 368)

CARLEY, Presiding Judge.

Seeking to recover for injuries sustained in an automobile collision, appellant-plaintiff brought the instant action against appellee-defendant. The case was tried before a jury and a verdict in favor of appellee was returned. Appellant appeals from the judgment entered by the trial court on the jury's verdict.

Of the twenty-four prospective jurors, five were black. Of these five, appellee used peremptory strikes against four. After voir dire, appellant made a *Batson* motion and the trial court conducted a

hearing, wherein appellee's counsel offered explanations for his employment of peremptory strikes against the four black prospective jurors. After the hearing, the trial court denied the *Batson* motion and appellant's only enumeration of error on appeal relates to this ruling.

1. "[C]ourts must entertain a challenge to a *private litigant's* racially discriminatory use of peremptory challenges in a *civil trial.*" (Emphasis supplied.) *Edmonson v. Leesville Concrete Co.*, 500 U. S. ____, ____ (II B) (111 SC 2077, 114 LE2d 660) (1991). As the Supreme Court's grant of certiorari and remand in *Chavous v. Brown*, ____ U. S. ____ (111 SC 2791, 115 LE2d 966) (1991) clearly demonstrate, the holding in *Edmonson* does not merely apply to civil actions in federal court. It applies equally to civil actions in state courts. See *Chavous v. Brown*, 409 SE2d 356 (S.C. 1991) (opinion on remand from Supreme Court). The effect of *Batson* and *Edmonson* is not to declare our statutes on peremptory challenges unconstitutional. Those decisions merely provide for a procedure to insure that the peremptory challenges that are authorized by statute are not employed in a racially discriminatory manner. It is not the exercise of peremptory strikes that is forbidden, but the exercise of peremptory strikes "based on either the race of the juror or the racial stereotypes held by the party." *Georgia v. McCollum*, ____ U. S. ____, ____ (III D) (112 SC 2348, 120 LE2d 33) (1992). "[T]he only limitation newly placed upon the 'full peremptory character of the historic challenge' is a requirement of racial neutrality. [Cit.]" *Gamble v. State*, 257 Ga. 325, 326 (2) (357 SE2d 792) (1987).

2. In a criminal case, unlike in a civil case, there is a statutory requirement that jurors are to be sworn *subsequent* to their selection. OCGA § 15-12-166; *Gamble v. State*, 141 Ga. App. 304 (1) (233 SE2d 264) (1977); *Sakobie v. State*, 115 Ga. App. 460 (2) (154 SE2d 830) (1967). Accordingly, in a criminal case there is a procedural requirement that a *Batson* motion be made subsequent to the selection of jurors but prior to the *trial jury being sworn pursuant to OCGA § 15-12-139. State v. Sparks*, 257 Ga. 97, 98 (355 SE2d 658) (1987). In a civil case, the oath that is prescribed by OCGA § 15-12-138 is to be given to each *panel* of the trial jury and, by its terms, that oath is to be given *prior* to the selection of jurors to serve in any individual case. Accordingly, in a civil case there can be no procedural requirement that a *Batson* motion be made *prior* to the trial jury being sworn, because no statute requires the administration of a separate oath *subsequent to selection* of a trial jury in a civil action. All that is required in a civil case is that the *Batson* motion be made subsequent to selection and prior to the commencement of the trial. "In this manner, the trial court will have an opportunity to determine whether there has been a violation . . . under *Batson* and, if so, to remedy that violation and proceed to the trial of the case." *State v. Sparks*,

supra at 98. In the instant case, appellant's *Batson* motion was timely filed.

3. Appellee does not contend that employment of peremptory strikes against four of the five black potential jurors would not serve to establish a prima facie case of racial discrimination. "Thus, the only remaining question is whether [appellee] sufficiently showed 'that discriminatory purpose was not involved.' [Cit.]" *Gamble v. State*, supra at 326 (5).

4. As to three of the four black potential jurors who were the subject of appellee's peremptory strikes, appellee's counsel offered a racially neutral reason. Those three either knew appellant and her family or presently worked for appellant's previous employer. Affinity between these prospective jurors and appellant was a racially neutral explanation for appellee's employment of peremptory strikes. "The explanation 'need not rise to the level justifying exercise of a challenge for cause,' but it must be 'neutral,' 'related to the case to be tried,' and a ' "clear and reasonably specific," explanation of his "legitimate reasons" ' for exercising the challenges.' [Cits.]" *Gamble v. State*, supra at 327 (5).

5. As to the fourth black potential juror, appellee's counsel initially offered a racially neutral explanation. Appellant was young and the prospective juror was of the same approximate age. Since appellee was apparently elderly, her counsel was authorized to consider the disparity in age between his client and appellant as a factor in the selection of the jury and to use a peremptory strike against a prospective juror who, because of her age, might consciously or unconsciously identify with appellant rather than with appellee. Under the circumstances, age was a "neutral" explanation which was "related to the case to be tried." See *Bess v. State*, 187 Ga. App. 185, 186-187 (1) (369 SE2d 784) (1988) (unmarried prospective juror over 40 and presumed childless sufficiently neutral explanation in a child molestation case).

However, appellee's counsel went further and indicated that he was also skeptical of the prospective juror's denial on voir dire that she actually knew appellant or the witnesses who would testify in the case. According to appellee's counsel, he had had, in a totally unrelated criminal case, "the unpleasant experience of observing the jurors operating along racial lines outside of the Grand Jury room. And there was a lot of misconduct in that some of the Grand Jurors were discussing with some of the victim's family what they should and should not do. . . . [I]t was an unfortunate circumstance . . . that makes me very suspicious that [the prospective juror and appellant] do know each other. . . . I doubt very seriously that they've lived in this community for the period of time that they have and the families don't know each other. . . . My gut feel[ing] was that she was a dan-

gerous juror, and perhaps may have wanted on this case."

"If the prospective juror had betrayed the possible existence of [her] own racist opinions, a peremptory strike would be warranted." *Randolph v. State*, 203 Ga. App. 115, 117 (3) (416 SE2d 117) (1992). However, the mere fact that jurors in a totally unrelated case had been divided "along racial lines" and had been guilty of "misconduct" lends no support whatsoever to the belief that the prospective juror had been dishonest on voir dire and would act "along racial lines" or engage in "misconduct" in the instant case. An assumption that the prospective juror in the instant case would likewise act "along racial lines" and engage in "misconduct" would constitute "an impermissible assumption ultimately arising solely from the juror's race." *Randolph v. State*, supra at 117 (3).

"While we realize that it may be unrealistic to expect [counsel] to put aside every improper influence when selecting a juror, we conclude that that is exactly what the law requires." *Speaker v. State*, 740 SW2d 486, 489 (Tex. App. 1987). "Even though [appellee's counsel] may have given one racially neutral explanation, the racially motivated explanation 'vitiates the legitimacy of the entire (jury selection) procedure.' [Cits.]" *Moore v. State*, 811 SW2d 197, 200 (Tex. App. 1991). See also *State v. Tomlin*, 384 SE2d 707, 710 (S.C. 1989); *McKinney v. State*, 761 SW2d 549, 551 (Tex. App. 1988). Appellee "failed to rebut [appellant's] prima facie case. We must therefore reverse." *Gamble v. State*, supra at 330 (7). See also *Randolph v. State*, supra at 117 (3).

*Judgment reversed. Pope and Johnson, JJ., concur.*

DECIDED OCTOBER 30, 1992.

*Helms & Helms, Catherine H. Helms, J. Jeffrey Helms*, for appellant.

*John T. Croley, Jr.*, for appellee.