## S94A0789. SMITH v. THE STATE.
(448 SE2d 179)

CARLEY, Justice.

Appellant was found guilty of murder and possession of a firearm during the commission of a felony. On appeal, the convictions were affirmed, but the case was remanded in order to permit the prosecutor to explain why nine black potential jurors had been peremptorily stricken and to allow the trial court to make findings under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). *Smith v. State*, 263 Ga. 224, 226 (4) (430 SE2d 579) (1993). On remand, a hearing was conducted and the trial court found

> that the explanation given by the [p]rosecutor for each of his peremptory challenges was racially neutral, legitimate, non-discriminatory, related to the case tried and clear and reasonably specific. . . . [I]mproper racial motivation has not been demonstrated. . . .

It is from this order that appellant brings the instant appeal.

1. Appellant urges that a *Batson* violation exists because two black potential jurors were peremptorily stricken based, in part, upon their residence in public housing.

It is not undisputed that these two prospective jurors were peremptorily stricken simply because they were *black* residents of public housing. Compare *Congdon v. State*, 262 Ga. 683, 685 (424 SE2d 630) (1993) (wherein the prosecutor, in effect, conceded that "the venirepersons were struck for no reason other than that they were black citizens of Ringgold"). To the contrary, the prosecutor asserted that, without regard to the race of the two prospective jurors, he had elected to exercise peremptory strikes against them because they were

residents of a particular public housing project where gang activity was known to be most prevalent. The crimes with which appellant was charged were gang-related and the State's case against appellant hinged upon the credibility of gang members. Thus, according to the prosecutor, he had determined that those prospective jurors, black or white, who lived in areas where gang activity was most prevalent were more likely to be prejudiced against the State's witnesses who were gang members.

Therefore, entirely unlike *Congdon v. State*, supra at 685, there was no actual showing here that

> [t]he State's justification for the exercise of its peremptory challenges was the result of a stereotypical belief that all black . . . residents [of a particular neighborhood] were biased against the [State's witnesses].

Instead, the actual showing was that the State's justification for the exercise of its peremptory strikes was the result of a racially-neutral belief that all residents, black or white, of a particular neighborhood might be biased against the State's witnesses. The prosecutor simply inferred that the two prospective jurors were more likely to have had direct exposure to gang activity than someone who did not live in their neighborhoods. "While this conclusion may or may not be empirically correct, we cannot say that it exhibits racially discriminatory intent as a matter of law." *United States v. Uwaezhoke*, 995 F2d 388, 393 (II) (B) (3rd Cir. 1993).

Although the prosecutor's asserted reason for exercising the peremptory strikes was racially neutral and not inherently discriminatory, it nevertheless has been recognized that basing the exercise of a peremptory strike upon the neighborhood wherein a prospective juror resides is " 'particularly problematic (raising) serious concerns about the potential for cloaking discriminatory motives in only marginally neutral justifications.' [Cit.]" *Congdon v. State*, supra at 685.

> The disproportionate impact of a prosecutor's criteria for excluding black prospective jurors . . . does not compel a finding that the [S]tate's motives were discriminatory. [Cit.] . . . Nonetheless, courts should be very wary of allowing gang membership to be an acceptable ground for striking jurors, particularly absent any gang involvement in the offense. This reasoning is particularly suspect when black defendants are being tried for an offense against a white victim.

*Williams v. Chrans*, 957 F2d 487, 490 (I) (7th Cir. 1992).

In this case, however, there was a direct connection between gang involvement and the offenses for which appellant was being tried and,

in addition, appellant, his co-defendant, the victim and the key witnesses are black. Moreover, here: There is no contention that the two black prospective jurors who were peremptorily stricken did not live in neighborhoods where gang activity is prevalent; There is no contention that whites who lived in neighborhoods where gang activity is prevalent were not peremptorily stricken; Five black jurors actually served on the jury and one of the alternate jurors was black; The State did not use all of its peremptory strikes. Having considered all of these factors,

> [t]he trial judge in this case chose to believe the prosecutor's race-neutral explanation for striking the two jurors in question, rejecting [appellant's] assertion that the reasons were pretextual. [Under] *Batson*, . . . the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal. . . .

*Hernandez v. New York*, 500 U. S. 352, 364 (111 SC 1859, 114 LE2d 395) (1991). Indeed, under *Batson*, a trial court's finding must be affirmed "unless it is clearly erroneous." *Minor v. State*, 264 Ga. 195, 197 (5) (442 SE2d 754) (1994).

The trial court's findings cannot be held to be clearly erroneous and we must, therefore, affirm the trial court's determination "that the State's explanation was race[-]neutral, particularly where much of the evidence to be presented at trial involved gangs and gang activity." *People v. Williams*, 625 NE2d 144, 150 (Ill. App. 1993). See also *United States v. Uwaezhoke*, supra; *Williams v. Chrans*, supra; *People v. Johnson*, 578 NE2d 1274, 1284-1287 (Ill. App. 1991).

2. Several black potential jurors were peremptorily stricken based, in part, upon the location of their residence in the same general area as appellant's residence, the State's witnesses' residences, or the scene of the crime.

> Other courts have found peremptory challenges race-neutral where the challenges were based on the potential juror's residence or employment being near the defendant's or witnesses' residences, or near the scene of the crime.

*People v. Johnson*, supra at 1285. Included among such "other courts" is our own Court of Appeals. *Higginbotham v. State*, 207 Ga. App. 424, 425 (3) (428 SE2d 592) (1993). Compare *Congdon v. State*, supra (wherein black potential jurors were peremptorily stricken based upon suspected prejudice arising solely from the location of their residences near that of the victim in an *unrelated* criminal investigation).

In the instant case,

> [t]he fact that several black prospective jurors, who apparently [did not reside] in the same general area as appellant[, the State's witnesses, or the scene of the crime], *did* serve on the petit jury [lends] credence to the State's assertion that its employment of . . . peremptory strike[s] was neutral and non-racial. Compare *Congdon v. State,* supra. . . . The trial court's finding that the employment of . . . peremptory strike[s] against . . . black prospective juror[s] who lived in the same general area as appellant[, the State's witnesses, or the scene of the crime] was racially neutral is not clearly erroneous.

(Emphasis in original.) *Higginbotham v. State,* supra at 425-426 (3).

3. As against two black potential jurors, the prosecutor gave multiple racially-neutral reasons for his exercise of a peremptory strike, including their divorced or childless state. Appellant urges a *Batson* violation exists because several white potential jurors who were divorced or childless were not also peremptorily stricken.

A prospective juror's divorced or childless state is a racially-neutral reason for the exercise of a peremptory strike. *Ware v. State,* 191 Ga. App. 896 (1) (383 SE2d 368) (1989); *Bess v. State,* 187 Ga. App. 185, 187 (1) (369 SE2d 784) (1988). Where, as here, multiple racially-neutral reasons are given for the peremptory strike of black potential jurors, a *Batson* violation does not exist simply because one or more of those racially-neutral reasons was not used by the prosecutor to strike white potential jurors. *Lingo v. State,* 263 Ga. 663, 667 (1) (c) (437 SE2d 463) (1993). Compare *Strozier v. Clark,* 206 Ga. App. 85, 87 (5) (424 SE2d 368) (1992) (one racially-motivated reason vitiates multiple racially-neutral reasons).

The prosecutor not only gave additional racially-neutral explanations for exercising peremptory strikes against two of the black potential jurors who were divorced or childless, he also gave additional racially-neutral explanations for not exercising peremptory strikes against divorced or childless white potential jurors or against those three childless black jurors who did actually serve on the petit jury. See *Berry v. State,* 263 Ga. 493 (435 SE2d 433) (1993).

> [W]e are not authorized to create an inference of discrimination where none is apparent, and where none has been found by the trial court, to whose findings we must give great deference. [Cits.]

*Lingo v. State,* supra at 668 (1) (c). The trial court's finding that there was no racial motivation in the prosecutor's exercise of peremp-

tory strikes against only two of the five black potential jurors who were divorced or childless and for whom other non-racial reasons were given is not clearly erroneous.

4. Appellant urges a *Batson* violation because the prosecutor conducted minimal, or no, voir dire of the black prospective jurors whom he peremptorily struck.

As to each black prospective juror, the prosecutor gave multiple racially-neutral reasons for the exercise of peremptory strikes, which racially-neutral reasons the prosecutor was not required to belabor on voir dire. The prospective jurors who were peremptorily stricken either did or did not live in neighborhoods where gang activity was most prevalent, they either did or did not reside near appellant, the State's witnesses or the scene of the crime, and they either were or were not divorced or childless. "There is no requirement that the State's racially neutral explanation for its use of peremptory strikes be supported by a transcript of voir dire. [Cits.]" *Burgess v. State*, 194 Ga. App. 179, 180 (390 SE2d 92) (1990).

> [T]he law provides that a prosecuting attorney's explanation, even if it is based upon mistake or ignorance, may be sufficient to rebut a prima facie *Batson* showing ([cit.]), so long as it is not " ' "whimsical or fanciful" ' " but is 'neutral,' 'related to the case to be tried,' and a ' "clear and reasonably specific," explanation of [the] "legitimate reasons" for exercising the challenges.' [Cit.]" [Cit.] In this case, there is no contention that anything in the record would show that [the proffered reasons did] *not* [apply to each prospective juror]. Accordingly, it cannot be said that the explanation[s] . . . , even if based upon mistake or ignorance, [were] whimsical or fanciful. [Cit.]

(Emphasis in original.) *Bess v. State*, supra at 187 (1).

This is to be contrasted with a case, such as *Congdon v. State*, supra, wherein the prosecutor relies upon a racial reason for the exercise of peremptory strikes. In *Congdon*, the prosecutor admittedly predicated his exercise of peremptory strikes upon a racially stereotypical belief that, as the result of an unrelated criminal investigation, all *black* residents of a particular neighborhood were prejudiced against the State's white prosecuting witness. Since the exercise of peremptory strikes cannot be based upon racial stereotypes, the prosecutor in *Congdon* should have attempted to corroborate on voir dire that the *black* prospective jurors actually harbored the suspected prejudice against the State's white prosecuting witness. If the prospective jurors in *Congdon* had then "betrayed the possible existence of [their] own racist opinions, a peremptory strike would [have been]

warranted." *Randolph v. State*, 203 Ga. App. 115, 117 (3) (416 SE2d 117) (1992). See also *Strozier v. Clark*, supra at 88 (5).

In contrast, where, as here, racially-neutral reasons are given,

> the ultimate inquiry for the [trial court] is not whether counsel's reason[s are] suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not race-based.

*United States v. Bentley-Smith*, 2 F3d 1368, 1375 (5th Cir. 1993).

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province." [Cits.]

*Hernandez v. New York*, 500 U. S., supra at 365.

The trial court's finding in this case that no racial motivation underlay the prosecutor's exercise of peremptory strikes was not clearly erroneous, notwithstanding the prosecutor's decision to avoid any possible alienation of prospective jurors which might result from asking some of them to confirm on voir dire the actual existence of prejudice which he suspected that they might harbor.

> Unless peremptory strikes are to be eliminated entirely, [cit.], it cannot be concluded that the facts in this case clearly demonstrate an improper use of the peremptory privilege. . . . Peremptory strikes are intended to give validity to just this type of judgment [on the part of the prosecutor], to conclusions which, while not sufficient to justify a for cause challenge, nonetheless raise the possibility of bias [on the part of prospective jurors].

*United States v. Williams*, 936 F2d 1243, 1247 (11th Cir. 1991) (cited with apparent approval in *Congdon v. State*, supra).

*Judgment affirmed. All the Justices concur, except Sears-Collins, J., who concurs in the judgment only.*

DECIDED SEPTEMBER 19, 1994.

*Gwyn P. Newsome,* for appellant.

*Douglas C. Pullen, District Attorney, J. Mark Shelnutt, Mark C. Post, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Paige M. Reese, Assistant Attorney General,* for appellee.