A96A0299. HERRIN v. THE STATE.
(471 SE2d 297)

BEASLEY, Chief Judge.

After a jury trial, Herrin was convicted of cruelty to children by maliciously causing excessive physical pain through failing to seek proper medical attention. OCGA § 16-5-70 (a). He was acquitted on charges of malice murder, OCGA § 16-5-1 (a), and the lesser included offense of battery, OCGA § 16-5-23.1 (a); felony murder by committing the felony of cruelty to children by maliciously causing excessive physical pain by striking a child, OCGA §§ 16-5-1 (c), 16-5-70 (b); felony murder by committing the felony of cruelty to children by maliciously causing excessive physical pain through failing to seek proper

medical attention, OCGA §§ 16-5-1 (c), 16-5-70 (a); aggravated battery, OCGA § 16-5-24 (a); and the lesser included offense of battery, OCGA § 16-5-23.1 (a). His only assertion of error is that the court allowed the State to exercise its jury strikes in a discriminatory manner to exclude males.

The charges against Herrin arose from the death of his girl friend's three-year-old daughter. Herrin had been involved with the mother for approximately six weeks before the death of the child, who had suffered physical abuse from her mother over some months. She and her mother stayed at Herrin's home for at least four days before her death. Medical testimony showed that she suffered trauma to various parts of her body during her last few days and hours. She died of blunt force trauma to the head that was consistent with a blow or blows and not consistent with a normal fall or falls. The fatal trauma probably occurred in her final 48 hours, and symptoms of sleepiness, nausea, and unconsciousness would have exhibited themselves within eight hours after injury.

On the day she died, the child was alone with her mother from about 8:00 to 11:00 a.m. and alone with Herrin from about 1:00 to 6:00 p.m. She was dead when she arrived at the hospital at 7:00 p.m., but earlier medical attention might have saved her life. Her mother pled guilty to felony murder and aggravated battery.

Herrin, a male, contends the court improperly allowed the State to exercise all of its peremptory strikes against males. In *J. E. B. v. Alabama*, 511 U. S. ___ (114 SC 1419, 1429-1430, 128 LE2d 89) (1994), the United States Supreme Court advanced its holding in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), to prevent litigants from exercising peremptory jury strikes based upon gender. The Equal Protection Clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender as well as race. See *Tedder v. State*, 265 Ga. 900, 901 (2) (463 SE2d 697) (1995); *Jackson v. State*, 220 Ga. App. 98 (469 SE2d 264) (1996).

Claims that jury strikes were based on gender are reviewed under the same standards as apply to race. See *Jackson*, supra. "*Batson* directs a three-step process for evaluating a claim of [gender] discrimination in the State's use of peremptory jury strikes: (1) the defendant must make a prima facie showing that the prosecution has exercised its peremptory challenges on the basis of [gender]; (2) the burden then shifts to the prosecutor to articulate a [gender]-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Kelly v. State*, 209 Ga. App. 789, 790 (1) (434 SE2d 743) (1993). The explanation need not justify a challenge for cause, but it must be neutral, related to the case to be tried, and constitute a clear and reasonably specific legitimate reason

or reasons. *Gamble v. State*, 257 Ga. 325, 327 (5) (357 SE2d 792) (1987).

After the jury was selected, counsel addressed the court in an unrecorded conference during which, apparently, Herrin made a motion based on a claim that the State's exercise of its strikes discriminated against males. Although the clerk was not called to testify concerning the composition of the panel and the parties' exercise of their strikes, the parties do not dispute as fact that the State used only five of its six available peremptory strikes, all five against males. After counsel for both sides discussed the strikes and the composition of the jury panel, the court stated that a prima facie case of discrimination was made. The State then explained each strike and the court denied Herrin's motion. Herrin contends that the explanations were insufficient as a matter of law as to three of the five stricken jurors.

By denying Herrin's *Batson* motion, the trial court implicitly determined that the State had met its burden of showing a gender-neutral basis for excluding each juror and that Herrin had not met his burden of proving purposeful discrimination. *Ellerbee v. State*, 215 Ga. App. 102, 107 (9) (449 SE2d 874) (1994). That finding is entitled to great deference and must be affirmed unless clearly erroneous. *Hernandez v. New York*, 500 U. S. 352, 364-365 (111 SC 1859, 114 LE2d 395) (1991) (plurality opinion); *Gamble v. State*, supra. According to counsel's statements at trial, the original 30-member jury panel was composed of 12 males and 18 females. The State used five strikes, all on men. Herrin used eleven strikes, nine on men. The resultant jury was composed of five men and seven women.

In explaining the strikes, the prosecutor stated he had earlier obtained a list of the jury panel members and made inquiries about them with local law enforcement personnel. As to one of the three strikes of which Herrin complains, the State's explanation was that law enforcement personnel stated the juror had been accused of a crime, although there was no indictment or conviction. As to another, law enforcement personnel informed the State that they "had had trouble" with him. Striking a prospective juror because of prior difficulties with law enforcement personnel is a gender-neutral rationale and does not violate *Batson* or its extensions. See *Werts v. State*, 196 Ga. App. 452, 453 (1) (395 SE2d 922) (1990); *Jackson*, supra.

As to the fifth juror struck by the State, the prosecutor explained he was struck "because he is a white male, single, has no children. He was a question mark because I had already used so many strikes. However, [a police officer] advised me that this was a person he was familiar with, this was a person that would not be a good State's juror and I used one of my peremptory strikes on him." Despite the prosecutor's wording, it is obvious that he was not stating that a *rea-*

*son* he struck the juror was "because he is . . . male." The wording was in the context of simply identifying the juror for discussion purposes, in recognition that this was someone for whom he would have to justify the strike. Although the discussion concerned only the five males the State struck, the prosecutor also identified another juror as a white male, and it does not appear there was any other significance attached to the identification. Defendant's counsel himself so referenced another juror.

Herrin, represented on appeal by the same counsel as at trial, does not suggest that the prosecutor's remark was an admission that gender was a consideration. Had the trial judge who heard it understood it as such, it would have been automatically an unconstitutional strike. As the district attorney stated, "the issue is males." Since the court denied Herrin's motion, it obviously concluded the remark did not convey a reason for the strike, and it appears all parties understood the recitation of the juror's gender to be for identification purposes only. Further, the court heard the explanation repeated at the hearing on Herrin's motion for new trial, and it was not remarked upon. Herrin did not argue at the hearing that this reference indicated an improper reason, but rather focused on what he considered to be the prosecutor's acquiescence to the wishes of a third party. An officer who knew the juror was used as a resource, not as decision-maker.

Second, the officer's information was not the only reason advanced by the State. The juror was single with no children, characteristics that are case-related and gender neutral. In a case involving the death of a child through a parent's beating and failing to seek medical attention, the jury's ability to perceive the circumstances of the very young victim and realize the consequences of failing to seek proper attention are relevant considerations. Parenthood bears upon that ability and sensitivity. The juror, being childless and unmarried, could more easily empathize with defendant through those common characteristics, jeopardizing neutrality.

"Peremptory challenges, by enabling each side to exclude those jurors it believes will be most partial toward the other side, are a means of eliminat[ing] extremes of partiality on both sides, thereby assuring the selection of a qualified and unbiased jury." (Citations and punctuation omitted.) *Holland v. Illinois*, 493 U. S. 474, 484 (110 SC 803, 107 LE2d 905) (1990). The prosecutor indicated that being married and/or having children were factors he considered in deciding whom to strike. These were not unconstitutional bases for excluding a potential juror. See *Bess v. State*, 187 Ga. App. 185, 187 (1) (369 SE2d 784) (1988). They do not deny equal protection but are facially valid, which is all that is required. *Purkett v. Elem*, 514 U. S. ___ (115 SC 1769, 131 LE2d 834, 840) (1995). See *Crutchfield v. State*, 218 Ga.

App. 360, 362 (3) (461 SE2d 555) (1995). Nothing in the record suggests that the State's concern about the potential jurors' marital and parental background was not genuine. See *Purkett*, supra; *Bess*, supra. The trial court's ruling was not clearly erroneous.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 9, 1996 —

*Krontz & Bowen, Kenneth W. Krontz*, for appellant.

*Peter J. Skandalakis, District Attorney, Anne C. Allen, Assistant District Attorney*, for appellee.