A97A0924. McGLOHON v. THE STATE.
(492 SE2d 715)

BIRDSONG, Presiding Judge.

Joel M. McGlohon appeals his convictions of aggravated assault and aggravated battery. He contends the trial court erred by setting aside two of his peremptory jury strikes and reseating two jurors previously challenged, and by failing to charge on the lesser included offense of battery in violation of OCGA § 16-5-23.1. McGlohon also contends his trial defense counsel was ineffective for failing to request a charge on this lesser included offense.

McGlohon, covered in blood, was apprehended by police who were responding to cries for help from a woman who had been physically attacked. Both McGlohon and the woman testified that they had been engaged in an extramarital affair and that one of them decided to break it off. The woman testified that it was her decision, but McGlohon testified that it was his. In any event, the woman testified that as she walked McGlohon to his car, he suddenly attacked her, stabbing her with a knife and hitting her. She testified that after she was knocked to the ground, McGlohon continued his attack by hitting her in the face while she was still on the ground. Medical personnel testified that she received serious injuries to her face and that she continues to suffer nerve damage. *Held*:

1. The transcript shows that after McGlohon exercised his peremptory challenges, the State invoked *State v. Mayweather*, 262 Ga. 727 (425 SE2d 659) to challenge McGlohon's challenge of several potential women jurors, and after considering McGlohon's explanation, the trial court overruled the challenges as to two jurors. McGlohon alleges that the trial court erred by disallowing these peremptory challenges.

"In *J. E. B. v. Alabama*, 511 U. S. [127] (114 SC 1419, 1429-1430, 128 LE2d 89) (1994), the United States Supreme Court advanced its holding in *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), to prevent litigants from exercising peremptory jury strikes based upon gender. The Equal Protection Clause of the United States Constitution prohibits discrimination in jury selection on the basis of gender as well as race. See *Tedder v. State*, 265 Ga. 900, 901 (2) (463 SE2d 697) (1995); *Jackson v. State*, 220 Ga. App. 98 (469 SE2d 264) (1996)." *Herrin v. State*, 221 Ga. App. 356, 357 (471 SE2d 297). The same standards used for reviewing claims of race dis-

crimination are used for gender discrimination claims. Id. *Batson* requires a three-step process for evaluating these claims: After a prima facie showing that the challenges were used on the basis of gender, the party exercising the challenge must then articulate a gender-neutral explanation for the challenge, and then the trial court must determine whether the party alleging the discrimination proved purposeful discrimination. *Kelly v. State*, 209 Ga. App. 789, 790 (1) (434 SE2d 743). In this case, McGlohon used all of his 13 strikes against female potential jurors. Therefore, the trial court properly required his counsel to explain the basis for his strikes.

In responding, McGlohon's burden was to show that his peremptory strikes were gender neutral, related to the case to be tried, and clear and reasonably specific. See *Berry v. State*, 263 Ga. 493, 494 (435 SE2d 433). Further a defendant may strike "from mistake, or from ignorance, or from idiosyncrasy" (*Gamble v. State*, 257 Ga. 325, 326 (2) (357 SE2d 792)), and he may strike for all sorts of consequential or inconsequential reasons, but he may not strike on the basis of gender. When the proponent of the strike offers a purported gender-neutral explanation, there is no requirement "to enunciate 'an explanation that is persuasive, or even plausible.'" *Jackson v. State*, 265 Ga. 897, 898 (463 SE2d 699). A neutral explanation is one based on something other than the gender of the juror, and if discriminatory intent is not inherent in the explanation, the reason offered will be deemed gender neutral. Id. At the final stage of a *Batson* inquiry, the ultimate burden of persuasion regarding motivation rests with, and never shifts from, the opponent of the strike. Id. at 899. At the final stage, "'implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.'" Id.

In this case, McGlohon's counsel explained his challenge of one of the jurors, "one reason, because they had no children. I know that's a reason. Another reason is because they just moved down here, they hadn't been down here too long. . . . I thought she was too old. I didn't like her being 70 years old." In regard to the other juror he stated, "I struck her, Mrs. Gross, because of the age difference between she [sic] and her husband. And she also has somebody in journalism and I don't particularly hanker for it. And she also works for Advantage Health Care over at Candler Hospital and she had some knowledge of nursing that we voir dired on."

A disparity in the ages of the prospective juror and the appellant can be a gender-neutral explanation which was related to the case being tried since the potential juror might consciously or unconsciously identify with the party/victim closer in age to the juror's own age. *Strozier v. Clark*, 206 Ga. App. 85, 87 (424 SE2d 368); *Bess v. State*, 187 Ga. App. 185, 186-187 (369 SE2d 784). Age, however, was only one of the reasons offered for this strike. McGlohon also asserted

that he struck this woman because she just moved to the area when the record showed that she had lived in the area for 17 years, and McGlohon retained male jurors who had lived in the area for less time. In regard to the other strike that was reversed, McGlohon stated that he based his strike, in part, because she had a knowledge of nursing, but the record shows that McGlohon also retained a male juror who also had such knowledge. Here considering the number of McGlohon's strikes against women, the fact that McGlohon proffered a "laundry list" of reasons for almost every strike, only some of which were facially neutral, and the indication that counsel was engaging in post hoc rationalization, the trial court's decision was well supported by the record.

As a trial court's findings on a *Batson* issue are entitled to great deference and will be affirmed unless clearly erroneous (*Higginbotham v. State*, 207 Ga. App. 424, 426 (428 SE2d 592)), we must affirm the trial court.

2. McGlohon also contends the trial court erred by refusing to charge on the lesser included offense of battery (OCGA § 16-5-23.1) on Counts 2 and 3. As the record shows that McGlohon did not request such a charge, we start from the proposition that "[a] trial judge never errs in failing to include a charge on a lesser included offense unless there is a written request to charge." *Mosley v. State*, 257 Ga. 382, 383 (2) (359 SE2d 653). "It is not reversible error for the trial court to fail to give a request to charge that is not submitted in writing by the complaining party. *Bullock v. State*, 202 Ga. App. 65 (413 SE2d 219) (1991)." *American Assn. of Cab Cos. v. Egeh*, 205 Ga. App. 228, 231 (5) (421 SE2d 741). Therefore, there was no error in failing to give these charges.

3. McGlohon also alleges that his defense counsel was ineffective because he did not request charges on the lesser included offense of battery on Counts 2 and 3. "It is a well established rule that any allegation of a violation of the right to counsel should be made at the earliest practicable moment. See *Smith v. State*, 255 Ga. 654 (341 SE2d 5) (1986). Because an attorney cannot reasonably be expected to assert or argue his or her own ineffectiveness, claims of ineffective assistance of counsel are often properly raised for the first time in a habeas corpus petition. However, in *Thompson v. State*, 257 Ga. 386 (359 SE2d 664) (1987), we held that where new counsel appointed or retained after the trial amends the motion for new trial without raising the issue of ineffective assistance, the claim was waived. In *Johnson v. State*, 259 Ga. 428 (383 SE2d 115) (1989), we held that the claim may be raised for the first time in the direct appeal if the direct appeal marks the first appearance of new counsel. The rule is consistent: New counsel must raise the ineffectiveness of previous counsel at the first possible stage of post-conviction review." *White v. Kelso*,

261 Ga. 32 (401 SE2d 733). As this record shows that McGlohon's appellate counsel were not appointed when there was an opportunity to raise this issue in the trial court, the case must be remanded to the trial court for consideration of this issue.

*Judgment affirmed in part and remanded. Ruffin, J., concurs. Eldridge, J., concurs specially.*

ELDRIDGE, Judge, concurring specially.

I concur in the majority's judgment. I write to clarify the standard of review with regard to *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), in Division 1. Much has been written regarding *Batson* and *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992) analysis since 1995 when the Supreme Court of Georgia authored *Jackson v. State*, 265 Ga. 897 (463 SE2d 699) (1995), the case upon which the majority relies in its analysis of a trial court's step three inquiry into the proffered explanations for the use of peremptory strikes.

*Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995), which *Jackson* discussed in detail, has come to be seen in relation to its purpose, which was an explanation of *appellate* court procedure when reviewing *Batson/McCollum* challenges on appeal; *Purkett* was *not* a directive for the trial court in its handling of a *Batson/McCollum* step three inquiry at the trial level. *Purkett*, supra at 131 LE2d at 840; *Gardner v. State*, 225 Ga. App. 427, 430 (483 SE2d 912) (1997). Thus, while *Purkett* held that "a legitimate reason is not a reason that makes sense" to the *appellate* court and that there is no requirement to "enunciate an explanation that is persuasive or even plausible" to an *appellate* court, such holding was never meant to apply to a *trial* court. *Purkett*, supra at 131 LE2d 840; *Gardner*, supra at 430-433. A legitimate reason is one that *does* make sense to the *trial* court and *is* plausible or persuasive to a *trial* court, whose duty it remains to determine that the proffered reason passes muster as "neutral, related to the case, clear and reasonably specific" based upon a myriad of factors to which an appellate court may not be privy through the record alone. *Purkett*, supra at 131 LE2d at 840; *Batson*, supra; *Gardner*, supra at 429-431, 434; see also *Russell v. State*, 267 Ga. 865, 867 (485 SE2d 717) (1997); *Turner v. State*, 267 Ga. 149 (476 SE2d 252) (1996); *Greene v. State*, 266 Ga. 439, 443 (5) (469 SE2d 129) (1996); *Tedder v. State*, 265 Ga. 900, 901 (463 SE2d 697) (1995). *Purkett* in no way required a *trial* court in step three to accept explanations that are unpersuasive or implausible simply because they are neutral on their face, and such a requirement would fly in the face of the trial court's constitutional duty under *Batson*. *Gardner*, supra at 431; see also *McKenzie v. State*, 227 Ga. App. 778 (490 SE2d 522) (1997).

Further, the step three procedure of *Batson/McCollum* analysis on the *trial* court level has not been "collapsed" when the trial judge makes a decision regarding the plausibility of the striker's explanations without hearing further from the challenger/opponent of the strikes. "Once the explanation for the strikes has been proffered, the inquiry is properly framed for the trial court's determination." (Punctuation omitted.) *Gardner*, supra at 429, citing *Greene*, supra at 443; *Turner*, supra; *McKenzie*, supra; *Jones v. State*, 226 Ga. App. 428 (487 SE2d 62) (1997); *Herrin v. State*, 221 Ga. App. 356 (471 SE2d 297) (1996). There is no obligation in step three for a trial court to formally "deem" explanations gender or race neutral simply because the explanations may be neutral on their face. Regardless of their neutral aspect, if the striker's explanations appear implausible or unpersuasive to the trial court, the trial court may so find immediately following the proffered explanations and based upon the totality of the circumstances. *McKenzie*, supra; *Scott v. State*, 225 Ga. App. 729, 730 (484 SE2d 780) (1997); *Gardner*, supra at 428-429.

In addition, although "the ultimate burden of persuasion rests with, and never shifts from, the opponent of the strike," in step three the trial court may determine that such burden of persuasion is satisfied by the strength of the challenger/opponent's prima facie showing under step one. *McKenzie*, supra; *Gardner*, supra at 438 (use of all ten strikes to remove white jurors "was very persuasive indeed"); see also *Lingo v. State*, 263 Ga. 664, 665 (1) (a) (437 SE2d 463) (1993) (trial court determines whether otherwise neutral explanations are "strong enough to overcome the prima facie case"); accord *Ford v. State*, 262 Ga. 558 (423 SE2d 245) (1992).

Also, regardless of whether the reasons are neutral on their face, the trial court may determine that the burden of persuasion is satisfied by, inter alia: (1) the strength of the prima facie showing in step one, and the trial court's disbelief of the proffered neutral explanations in relation thereto; (2) the trial court's determination that the neutral explanations themselves are unpersuasive or implausible; (3) the trial court's consideration of similarly situated jurors who were left unchallenged; (4) the trial court's knowledge of the one utilizing the strike in relation to the neutral explanations given; and/or (5) the trial court's knowledge of the community in relation to the neutral explanations given. *Gardner*, supra at 429, citing *Hernandez v. New York*, 500 U. S. 352, 359 (111 SC 1859, 114 LE2d 395) (1991), *St. Mary's Honor Center v. Hicks*, 509 U. S. 502 (113 SC 2742, 125 LE2d 407) (1993), *Hairston v. Gainesville Sun Publishing Co.*, 9 F3d 913, 914 (11th Cir. 1993); *McKenzie*, supra, citing *Hernandez*, supra, *St. Mary's Honor Center*, supra. "In the typical peremptory challenge inquiry, the decisive question will be *whether counsel's [otherwise] race-neutral explanation for a peremptory challenge should be*

*believed.* There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the [striker's] state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.' " (Emphasis supplied.) *Hernandez,* supra at 365; *McKenzie,* supra; *Gardner,* supra at 428; *Scott,* supra at 730; *Taylor v. State,* 219 Ga. App. 475 (465 SE2d 473) (1995).

Instructive, too, is our Supreme Court's recent decisions in *Greene v. State,* 268 Ga. 47 (485 SE2d 741) (1997), and its predecessor, *Greene,* supra at 440 (2) ("*Greene I*"). Although the referenced portions of these opinions deal with jury challenges under *Wainwright v. Witt,* 469 U. S. 412 (105 SC 844, 83 LE2d 841) (1985), in death penalty cases, the Supreme Court's thorough discussion of the necessity for deference to a trial court's determinations with regard to factual matters during jury selection applies no less completely to a trial court's step three determinations under *Batson/McCollum* — in fact, the language echoes that of *Batson/McCollum* case law: "On review, an appellate court should not substitute its findings for those of the trial court. The conclusion that a prospective juror is disqualified for bias is one that is based upon findings of demeanor and credibility which are peculiarly within the trial court's province and such findings are to be given deference by appellate courts." *Greene I,* supra at 441.

Clearly a trial record alone cannot provide a legitimate basis from which to substitute an appellate court opinion for a trial court's factual/credibility findings in step three; this has been recognized in numerous recent decisions wherein *Batson/McCollum* issues were raised. *Jones,* supra at 430 ("[t]he trial court, unlike this Court, had the opportunity to view [the] prospective jurors"); *McKenzie,* supra at 780-781 ("the trial judge . . . alone has the opportunity to observe the witnesses' testimony and evaluate their credibility"); *Scott,* supra at 731 (1) ("the trial court can visually and auditorially observe the demeanor of both prospective jurors and counsel"); *Gardner,* supra at 434 ("a trial court's credibility determination under *Batson/McCollum* will often go beyond the mere words that accompany the record before the appellate courts"); see also *Greene I,* supra at 440, citing *Wainwright,* supra at 426 (deference must be paid the trial judge because it is the trial judge "who sees and hears the juror").

Obviously, the evolution of *Batson/McCollum* jurisprudence has been ongoing since the Supreme Court's decision in *Jackson.* Based thereon, I concur with the majority's judgment because I cannot say that the trial court was clearly erroneous in choosing to disbelieve appellant's explanations. Appellant has not demonstrated error in the trial court's factual/credibility determination that appellant's

explanations failed to overcome the prima facie case. *Greene I*, supra at 442; *Turner*, supra at 151; *McKenzie*, supra; *Scott*, supra at 731; *Jones*, supra; *Gardner*, supra at 438; *Herrin*, supra at 357; see also *Lingo*, supra at 666.

DECIDED OCTOBER 3, 1997.

*Zipperer & Lorberbaum, Alex L. Zipperer, Eric R. Gotwalt*, for appellant.

*Spencer Lawton, Jr., District Attorney, Lori E. Loncon, Assistant District Attorney*, for appellee.